**The DE LAVAL SEPARATOR COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 72–10–02161.**

United States Court of International Trade.

Jan. 30, 1981.

---

as "refrigerators and refrigerating equipment, whether or not electric, and parts thereof" and were assessed with duty at 6 percent ad valorem.

Plaintiff contends the imported merchandise is entitled to entry free of duty under item 666.00, Tariff Schedules of the United States, for the reasons set forth, *infra*. Plaintiff further contends the doctrine of *stare decisis* is not applicable where there is a showing of clear error in the prior case or unlitigated issues of law or fact.

Defendant filed a motion for summary judgment pursuant to Rules 8.2 and 4.12 of the rules of this court on the basis of the decision in De Laval 1, which it contends is *stare decisis*. The statement of material facts as to which there are no genuine issues of fact to be tried has been set forth by defendant as follows:

1. The merchandise involved in this case is described in the complaint as "Farm Tanks without refrigeration units."

Rode & Qualey, New York City (John S. Rode, New York City, on the brief), for plaintiff.

2. The merchandise involved in this case is described on the commercial invoices included in the entry papers as "Farm Tanks without refrigeration units," and bear model numbers E550R, E600R0, E650R, E800R0, E1000R0, E1250R0, E1500R0, and E2000R0. The merchandise imported under entry number 72–119324, protest number 3801–2–000306, while bearing the same model numbers (E800R0, E1000R0, E1500R0) are described on the commercial invoices as "Bulk Coolers."

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, Commercial Litigation Branch, New York City (James A. Resti, New York City, on the briefs), for defendant.

FORD, Judge:

This action is submitted to the court pursuant to a motion for summary judgment by defendant. The involved merchandise was originally the subject of a decision in *The De Laval Separator Company v. United States* (De Laval 1), 78 Cust.Ct. 95, C.D. 4693, 434 F.Supp. 656 (1977), *rev'd* 65 CCPA 48, C.A.D. 1204, 569 F.2d 1134 (1978), *reh. den.* April 27, 1978. The record in De Laval 1 was incorporated herein.

3. The merchandise is identical in all respects to the merchandise involved in *De Laval Separator Co. v. United States*, 78 Cust.Ct. 95, C.D. 4693, 434 F.Supp. 656 (1977), *rev'd* 65 CCPA 48, C.A.D. 1204, 569 F.2d 1134 (1978), *reh. den.* April 27, 1978, the record of which has been incorporated in this action.

The merchandise involved consists of stainless steel farm tanks which were imported without a refrigeration unit. They were classified by Customs under item 661.-35, Tariff Schedules of the United States,

Plaintiff admits the foregoing but asserts the following, which it contends are genuine issues of fact to be tried:

1. A genuine issue of fact exists with respect to the question of whether or not

the imported farm tanks are "solely or chiefly used as a part" of a refrigerator; it is plaintiff's contention that the imported farm tanks are neither solely nor chiefly so used.

2. A genuine issue of fact exists with respect to the question of whether the imported tanks are chiefly used "to refrigerate milk"; plaintiff contends that the imported tanks are solely and chiefly used for the handling of agricultural products.

3. A genuine issue of fact exists with respect to the question of whether the imported tanks are within the meaning of the term "milking machines" in item 666.-00, TSUS, by virtue of their design, construction, and actual use. It is plaintiff's alternative claim herein that the farm tanks are so designed, constructed and used that they are, in fact, "milking machines".

The Court of Customs and Patent Appeals in De Laval 1 has heretofore determined the issues in paragraphs 1 and 2 of plaintiff's statement as follows:

We shall assume arguendo, without deciding, that the imported farm tanks are encompassed by the broad sweep of item 666.00. We shall assume, further, that the tanks are neither refrigerators nor refrigerating equipment within the meaning of item 661.35.

Nevertheless, the imported farm tanks are clearly "parts" of refrigerators under item 661.35 because they are solely or chiefly used as parts of refrigerators. See General Interpretative Rule 10(ij) which states: "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article * * *." Each imported tank is designed so that, without modification, it may be connected to a refrigeration unit. The tank will not function and operate for the purpose for which it is intended without the refrigeration unit. In our view, the various nonrefrigeration functions which appellee attributes to the tanks (e. g., storage sanitation, mixing, measuring) are merely ancillary to the primary function of refrigerating milk on a dairy farm. Certainly, with respect to storage and sanitation, these functions are common to any refrigerator. We note that each tank as imported contains the following component parts: thermal insulation which helps maintain the milk in a cool state as long as possible; an agitator which moves the milk across the bottom of the tank and prevents freezing when the unit is operating; a built-in thermometer which indicates the temperature of the milk in the tank; and refrigeration and electrical control panels which control the refrigeration process. These component parts are all indicia of a product which, in the language of General Interpretative Rule 10(ij), is "solely or chiefly used as a part" of a refrigerator. [Pp. 49–50, 569 F.2d pp. 1135–1136.]

■ It is noted the claim for milking machines contained in paragraph 3 of plaintiff's statement, *supra*, was contained in the complaint filed herein and in De Laval 1. Accordingly, plaintiff in De Laval 1 had the opportunity to present evidence with respect to the claim for milking machines. At least some evidence with respect to milking machines was in fact adduced by plaintiff in De Laval 1 through the testimony of Mr. Guest. The witness indicated the production of milk involves three major phases, i. e., the harvesting (milking), handling (conducting the milk to the tank), and storage in the tank. It is axiomatic that any claim which is not pressed is deemed abandoned.

■ The proposed testimony, as indicated in the affidavit of counsel for plaintiff, with respect to the use of the complete milking system would, in effect, be cumulative of the testimony of Mr. Guest. In any event, in the opinion of the court, such testimony would merely establish that said tanks are parts of the complete milking system. Therefore, headnote 1, schedule 6, part 4, subpart A would be controlling whether the court were to consider the provision for milking machines or the other claims made herein and in De Laval 1.

The Court of Customs and Patent Appeals made the following observation with respect to said headnote:

Furthermore, we believe that headnote 1 of Schedule 6, part 4, subpart A demonstrates a clear Congressional preference for classification in subpart A vis-a-vis any other subpart of part 4. That headnote reads as follows: "A machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart." The invasive language of this headnote is applicable to all other subparts of part 4; moreover, articles which meet the description of "parts thereof" in an item of subpart A are subject to the headnote. *Costa International Corp. v. United States*, 58 CCPA 48, C.A.D. 1003, 434 F.2d 1053 (1970); *American SF Products, Inc. v. United States*, 61 Cust.Ct. 257, D.C. 3593, 291 F.Supp. 685 (1968). Applying the headnote, it follows that item 661.35, which is in subpart A, must prevail over item 666.00, which is in subpart C.

Appellee contends that headnote 1 of Schedule 6, part 4, subpart A is inapplicable because the imported merchandise is not a machine or appliance which is described in subpart A. It is clear from our discussion above that we disagree with this contention. * * * [P. 51, 569 F.2d p. 1136.]

Additionally, plaintiff contends the decision of the appellate court in De Laval 1 is erroneous both with respect to the applicability of General Interpretative Rule 10(ij) and the question of whether the provision for on-farm equipment for handling or drying of agricultural products was a specific provision. The court addressed itself to the issue and stated as follows:

Having decided that the imported tanks are "parts" of refrigerators under item 661.35, and assuming that they are also blanketed by item 666.00, we next must determine which item *prevails*. In this regard, the Customs Court was mindful of General Interpretative Rule 10(ij) which states: "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part." [Our emphasis.] The court found that the provisions of item 666.00 are sufficiently specific to prevent classification as parts of refrigerators under item 661.35. We disagree.

Item 666.00 contains two provisions which are pertinent to the case at bar: (1) "on-farm equipment for the handling or drying of agricultural or horticultural products," and (2) "agricultural and horticultural implements not specially provided for." Both provisions are, by their very terms, sweeping in scope.* Assuming that they encompass the imported farm tanks, it is quite clear that they also encompass countless other products which find utility on a farm. They are scarcely the "specific provisions" which would invoke the operation of General Interpretative Rule 10(ij) in order to prevent classification as parts of refrigerators under item 661.35. Neither provision of item 666.00 is an *eo nomine* or "specific provision," as that term is used in Rule 10(ij), for the imported farm tanks. See *Parts Manufacturing Associates v. United States*, 73 Cust.Ct. 42, 48, C.D. 4552, 377 F.Supp. 1356, 1359 (1974) * * * [Pp. 50–51, 569 F.2d pp. 1136–1137.]

* Contrast the provision in item 685.22 for "[r]adiotelegraphic and radiotelephonic transmission and reception apparatus; radio broadcasting and television transmission and reception apparatus and parts thereof." This provision was held to describe radios in detailed, definitive, and explicit language and, accordingly, to be a specific provision within the meaning of Rule 10(ij). *Robert Bosch Corp. v. United States*, 63 Cust.Ct. 187, C.D. 3895, 305 F.Supp. 921 (1969).

Inasmuch as the newly claimed provision for milking machines is specific, the tanks would only be considered parts of the milking system as indicated *supra*. Rule 10(ij) would, therefore, have no applicability in such instance in view of headnote 1, schedule 6, part 4, subpart A. Rule 10(ij), being a rule of interpretation must yield to the congressional intent expressed in said headnote. *Esco Manufacturing Co. aka J. Hofert Co. v. United States*, 63 CCPA 71, C.A.D. 1167, 530 F.2d 949 (1976).

The foregoing argument was presented by plaintiff to the Court of Customs and Patent Appeals in its motion for rehearing in De Laval 1, which was denied.

Plaintiff contends the doctrine of *stare decisis* is not applicable in this case. Plaintiff urges, by virtue of the new claim and clear error on the part of the Court of Customs and Patent Appeals in De Laval 1 that said doctrine is not controlling herein. The applicability of the doctrine of *stare decisis* is within the discretion of the court. *Hertz v. Woodman*, 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001 (1910); *Marianao Sugar Trading Corp. v. United States*, 29 Cust.Ct. 275, C.D. 1481 (1952), *aff'd*, 41 CCPA 236, C.A.D. 557 (1954). *Stare decisis* in the instant action is, in the opinion of the court, applicable.

In view of the foregoing, defendant's motion for summary judgment is granted.

Judgment will be entered accordingly.