Slip Op. 04-48

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                                        :
FORMER EMPLOYEES OF                                     :
QUALITY FABRICATING, INC.,                             :
                                                        :
            Plaintiffs,                                 :
                                                        :          Before:        WALLACH, Judge
                                                        :          Court No.:     02-00522
        v.                                              :
                                                        :
UNITED STATES DEP'T OF LABOR,                          :
                                                        :
            Defendant.                                 :
_____:

[Defendant's Motion to Dismiss is denied.]

Decided: May 11, 2004

Collier Shannon Scott, (Adam Gordon and John Brew), for Plaintiffs.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Patricia M. McCarthy, Assistant Director; Stephen Tosini, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, for Defendant.


**WALLACH, Judge:**

**OPINION**

**I**
**Introduction**

        Plaintiffs, Former Employees of Quality Fabricating, Inc., brought this action seeking

judicial review of the United States Department of Labor's ("Labor") decision denying their

eligibility for trade adjustment assistance ("TAA") benefits under Section 223 of the Trade Act

of 1974. 19 U.S.C. § 2273 (2000). Defendant filed a Motion to Dismiss ("Defendant's Motion").

1

On April 13, 2004, the court heard oral argument on Defendant's Motion. Defendant argues that Plaintiffs have failed to state a claim upon which relief could be granted pursuant to USCIT R. 12(b). For the foregoing reasons, Defendant's Motion is denied.

## II
## Background

On June 28, 2001, Plaintiffs filed a petition seeking North American Free Trade Agreement Transition Adjustment Assistance ("NAFTA TAA") benefits in accordance with 19 U.S.C. § 2331 (1999).[1] Labor registered the petition on July 5, 2001, and designated it Petition #5051. On May 17, 2001, Labor denied Plaintiffs' petition for certification of eligibility to receive trade adjustment assistance. See Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance, 67 Fed. Reg. 35,140, 35,142 (May 17, 2002). Plaintiffs seek judicial review of Labor's decision denying their eligibility for "TAA" benefits.

Both parties have filed a number of motions in this matter. On July 1, 2003, Plaintiffs filed a 56.1 Motion for Judgment on the Agency Record. Defendant did not file a response to this motion. Subsequently, on August 1, 2003, Defendant filed a Motion for Voluntary Remand in order to "conduct a further investigation and to make a determination as to whether the petitioners are eligible for certification for worker adjustment assistance benefits." Defendant's Motion For Voluntary Remand at 1. Plaintiffs opposed the voluntary remand and on August 11,

---

[1] On August 6, 2002, 19 U.S.C. § 2331 was repealed by Pub. L. 107-210, Div. A, Title I, Subtitle A, § 123(a), 116 Stat. 933, 944 (2002). Congress consolidated the NAFTA TAA and the Trade Act of 1974 into the Trade Act of 2002. See Former Employees of Oxford Auto. U.A.W. Local 2088 v. United States, Slip Op. 2003-129, 2003 Ct. Intl. Trade LEXIS 128 (Oct. 2, 2003). The repeal does not impact Plaintiffs because the determination regarding their eligibility occurred prior to the effective date of the repeal.

2003, filed an Opposition to the Motion ("Plaintiff's Opposition to Voluntary Remand"). On August 22, 2003, Defendant submitted a Reply in Support of Its Motion for Voluntary Remand ("Defendant's Reply") to the court.

As a result of the variance among the issues proposed by the parties in their briefs, on August 27, 2003, the court ordered supplemental briefing to ascertain the parties' precise claims. Thereafter, on August 28, 2003, Plaintiff filed a Motion to Strike Defendant's Reply claiming that a reply was not permitted under the rules of this court and that the Defendant had failed to ask for leave to file its Reply brief. The court scheduled oral argument on these three motions for October 30, 2003. Before oral argument was held, however, Defendant filed its Motion to Dismiss.[2]

### III
### Jurisdiction

Defendant claims that this court does not have jurisdiction to entertain Plaintiffs' claims. Defendant's Supplemental Brief in Support of its Motion for Voluntary Remand at 3 ("Defendant's Supplemental Brief"); Defendant's Motion at 7. Once jurisdiction is challenged, the Plaintiff must prove that jurisdiction before this court is proper. United States v. Biehl & Co., 3 CIT 158, 160 (1982); Hilsea Inv. v. Brown, 18 CIT 1068, 1070 (1994); see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189, 59 S. Ct. 780, 80 L. Ed 1135 (1936). A "mere recitation of a basis for jurisdiction, by either a party or a court, cannot be controlling:

---

[2] In their briefs regarding the Motion to Dismiss, both parties reference portions of their other pending motions as well as their supplemental briefs to bolster and explain their arguments regarding Defendant's Motion to Dismiss. See Defendant's Motion to Dismiss at 4-5; see also Plaintiff's Opposition to Defendant's Motion to Dismiss at 7 n. 2 ("Plaintiff's Opposition"). Accordingly, the court considers the relevant portions of all pending motions and briefs in reaching this decision.

federal courts are of limited jurisdiction, and may not alter the scope of either their own or another courts' statutory mandate." See Williams v. Sec'y of Navy, 787 F.2d 552, 557 (Fed. Cir. 1986). Moreover, this court must also independently assess the jurisdictional basis for cases before it. See Ad Hoc Comm. v. United States, 22 CIT 902, 906 (1998).

**The Court Has Jurisdiction Under 28 U.S.C. § 1581(d) to Entertain An Appeal Challenging Labor's Secondarily-Affected Worker Groups Benefit Determination**

Defendant argues that secondarily-affected worker group benefits, referenced in the North American Free Trade Agreement Act's Statement of Administrative Action ("NAFTA SAA"), are not part of the Trade Act of 1974. See NAFTA SAA, H.R. Doc. No. 103-159, vol. 1, at 450 (1993). Defendant claims that "Congress only granted this Court limited jurisdiction to review only matters that relate to North American Free Trade Agreement Transitional Adjustment Assistance ("NAFTA-TAA") benefits." Defendant's Brief in Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss at 3 ("Defendant's Reply"). Thus, it says that this court does not have jurisdiction over appeals regarding Labor's administration of its secondarily-affected worker group determinations.[3]

Chapter 2 of Title II of the Trade Act of 1974 established benefits, called trade adjustment assistance, for primarily affected worker groups. Trade Act of 1974, P.L. No. 93-618, 88 Stat. 1978, 2019-2020 (1975) (codified at 19 U.S.C. §§ 2271-2275 (1999)). These benefits include income support payments, job search and relocation allowances, and career services. See Former Employees of Chevron Prods. Co. v. United States, 298 F. Supp. 2d 1338, 1340 (CIT 2003). Pursuant to 19 U.S.C. § 2273(a), certification of eligibility determinations by the Secretary of

---

[3] Defendant did not indicate in its brief where jurisdiction to determine such claims would be proper.

Labor must be made

> as soon as possible after the date on which a petition is filed
> under section 221 . . . the Secretary shall determine whether the petitioning group
> meets the requirements of section 222 and shall issue a certification of eligibility
> to apply for assistance under this subpart covering workers in any group which
> meets such requirements.

Once this determination is made, Labor is required to publish it in the Federal Register along with the rationale for its decision. 19 U.S.C. § 2273(c). Pursuant to 28 U.S.C. § 1581(d)(1), this court has exclusive jurisdiction over any civil action commenced to review "any final determination of the Secretary of Labor under section 223 of the Trade Act of 1974 with respect to the eligibility of workers for adjustment assistance under such Act." See 19 U.S.C. § 2273 (1999).

On December 8, 1993, Congress approved NAFTA and implemented it through the NAFTA Implementation Act of 1993, P.L. 103-182, Section 101(a)(b), 107 Stat. 2057 (1993) ("NAFTA Implementation Act"). See Bestfoods v. United States, 165 F.3d 1371, 1374 (Fed. Cir. 1999). As well as approving NAFTA, Congress approved the NAFTA SAA. NAFTA, H.R. Doc. No. 103-159, vol. 1, at 10 (1993); see NAFTA SAA, H.R. Doc. No. 103-159, vol. 1, at 450 (1993); see Bestfoods, 165 F.3d at 1374; Plaintiffs' Motion for Judgment on the Agency Record, Appendix 3; see also 19 U.S.C. § 3311(a)(2). The SAA described and the NAFTA Implementation Act authorized the promulgation of regulations "as necessary or appropriate to implement immediately applicable U.S. obligations under the NAFTA," NAFTA SAA, H.R. Doc. No. 103-159, vol. 1, at 463, as well as those regulations that were necessary or appropriate to carry out the actions proposed in the SAA. 19 U.S.C. § 3314(b); see Bestfoods v. United States, 165 F.3d at 1374. The services provided pursuant to the NAFTA Implementation Act,

5

including those referenced by the SAA, are called transitional adjustment assistance.[4]  See

NAFTA Implementation Act P.L 103-182, 107 Stat. 2057, 2554.  The NAFTA SAA explained

that one "comprehensive program" was to afford affected workers with the necessary assistance.

NAFTA SAA at 672.  In order to provide this support, the Administration proposed a transitional

worker assistance program having two components.  The first component provided benefits to

primarily affected workers; the second, to secondarily-affected workers.  The NAFTA SAA

explained that under the second component

> [W]orkers in firms that are indirectly affected by the NAFTA would be eligible to receive assistance pursuant to the national grant program administered by the Secretary of Labor under Part B of Title III of the Job Training Partnership Act. The Secretary will reserve funds for this purpose. These firms will include suppliers of the firms that are directly affected by imports from Mexico or Canada or shifts in production to those countries.  Secondary firms will also include "upstream" producers, such as direct processors, that assemble or finish products made by directly-affected firms . . . .
>
> *Workers in these firms will receive the same rapid response, basic readjustment and employment services, job search and relocation assistance, training and income support available to workers in directly affected firms.*  In addition, income support would be available under this component to workers who are covered by a petition certified under the first component of the program but who are not eligible for income support under that component because they are not eligible for unemployment compensation, do not meet the tenure requirement, or were unable to meet the enrollment deadline because the first available enrollment date was past the deadline or a course was abruptly canceled.

Id. at 674. (emphasis added).

Pursuant to 19 U.S.C. § 2331(c) (2000), workers who file a petition for adjustment

assistance and meet the eligibility requirements are issued a certification of eligibility to apply for

---

[4] There is no significant difference between transitional adjustment assistance provided for pursuant to NAFTA and trade adjustment assistance provided pursuant to the Trade Act of 1974. See Former Employees of Chevron Prods., 298 F. Supp. 2d at 1340.

assistance by Labor. Those denied certification of eligibility may appeal Labor's denial of

NAFTA TAA benefits, pursuant to 19 U.S.C. § 2395(a) (2000), which provides that:

> A worker . . . aggrieved by a final determination of the Secretary of Labor under section 223 of this title, a firm or its representative or any other interested domestic party aggrieved by a final determination of the Secretary of Commerce under section 251 of this title. . . may, within sixty days after notice of such determination commence a civil action in the United States Court of International Trade for review of such determination.

The NAFTA SAA explained that Labor was assigned the responsibility for administering the program and determining whether a group of workers is secondarily-affected. Workers from indirectly affected firms were then eligible to receive benefits and services delivered through the dislocated worker program under the Job Training Partnership Act ("JTPA").[5] The secondarily-affected worker eligibility determination made under NAFTA is separate from the benefits provided by Title III of the JTPA. See NAFTA SAA at 672, 674; Plaintiff's Response to Defendant's September 9, 2003 Submission ("Plaintiff's Response") at 4; see also Plaintiff's Appendix to its Memorandum of Law Accompanying Plaintiff's Motion for Judgment Upon the Agency Record ("Plaintiff's Appendix") at 3. The NAFTA SAA explains that "the transitional program will draw on the best aspects of existing programs." NAFTA SAA at 672.

The JTPA was fundamentally different from the Trade Act of 1974. The provisions relating to the JTPA did not deal with any of the substantive aspects for requirements relating to petitions, worker eligibility, or notice. Rather, the JTPA focused on funding benefits once

---

[5] The JTPA, 29 U.S.C. §§ 1662 et seq. (1994 & Supp. IV 1998), was repealed effective July 1, 2000, by the Workforce Investment Act of 1998 ("WIA"), Pub. L. No. 105-220, § 199(b)(2), 112 Stat. 1059-60. The repeal is not relevant to the court's decision.

7

eligibility is determined.[6] This is in direct contrast to the Trade Act of 1974, which explains the substantive analysis that Labor is required to make when certifying secondarily-affected workers. See Plaintiff's Response at 5-6, Exhibits 2A. Title 19 contains specific substantive elements such as petition requirements, pursuant to 19 U.S.C. § 2271; group eligibility requirements, pursuant to 19 U.S.C. § 2272; determinations by the Secretary of Labor, pursuant to 19 U.S.C. § 2273; and program benefits, pursuant to 19 U.S.C. §§ 2291. See Plaintiff's Response at 6, Exhibits 2A, 2B. There are no references to the source of funding for secondarily-affected workers within these provisions, and they cannot be construed as containing a source of funding. As noted above, the JTPA did not provide information regarding petition requirements, certification, notice and eligibility for benefits for secondarily-affected workers. The JTPA, accordingly, could not be construed as the source for an entitlement of benefits.

_____

[6] The 1988 provisions of Part B of the JTPA contain four sections addressing Federal responsibilities related to Employment and Training Assistance for Dislocated Workers. The sections detail:

(1)     the use of funds if state authorities fail to submit a required plan concerning state delivery of services pursuant to 29 U.S.C. § 1662;

(2)     distribution of funds by the Secretary of Labor to the states, state performance monitoring, information gathering and technical assistance, pursuant to 29 U.S.C. § 1662a;

(3)     circumstances and activities for use of funds, use of funds in emergencies, staff training, and technical assistance, pursuant to 29 U.S.C. § 1662b; and

(4)     use of the funds to establish demonstration programs, pursuant to 29 U.S.C. § 1662c.

See Plaintiff's Response at 5, Exhibit 1A. The 1993 revisions to the JTPA added three provisions relating to funding of defense-related adjustment programs and transition assistance related to worker dislocation resulting from the Clean Air Act. See 29 U.S.C. §§ 1662d, 1662d-1 & 1662e (1993); Plaintiff's Response at 5, Exhibit 1B.

The NAFTA SAA explains the substantive requirements for benefit eligibility, and lacking any statutory authority or legislative history to the contrary, it can only be viewed as the source from which procedural requirements regarding secondarily-affected worker transitional adjustment assistance benefits emanate. This view is supported by the NAFTA implementing statute, 19 U.S.C. § 3314(b), which requires that those regulations "necessary or appropriate to carry out the actions proposed in the statement of administrative action," are authorized. Statutes that relate to the same matter, *in pari materia,* should be read to "work harmoniously together." Ambassador Div. of Florsheim Shoe v. United States, 748 F.2d 1560, 1565 (Fed. Cir. 1984). Both the entitlement and the funding provision must work in concert to effectuate each other. The court must consider statutes and legislation as a whole, not in a vacuum. To construe the source of the benefits conferred, the SAA, as not affecting the procedures supplying the benefit, in the absence of legislative history to the contrary, offends traditional cannons of legislative and statutory interpretation.[7]

The TAA and NAFTA compose part of the trade related purpose and jurisdiction of this court. Allowing secondarily-affected worker benefits claims to be litigated in other district courts would defeat the Congress' intent and jurisdictional grant. Therefore, because the secondarily-affected workers claims were developed as a direct result of job losses attributed to NAFTA, and this court has jurisdiction to review claims relating to denial of benefits for claims of trade related job loss, it would be illogical, in the absence of contrary authority, to hold that

_____

[7] Moreover, the subsequent legislation by Congress in the Trade Adjustment Assistance Reform Act of 2002 ("Reform Act"), which specifically amended the Trade Act of 1974 to include secondarily-affected worker groups supports the court's analysis. See 19 U.S.C. § 2272(b).

9

only some denial of benefits are reviewable by this court and others are not.

The Court of International Trade "operates within the precise and narrow jurisdictional limits" granted by Congress. Biehl, 3 CIT at 162. Nonetheless, the exclusive jurisdiction of this court and the deference Congress and other courts have given to the CIT's expertise in trade-related matters lends support for the conclusion that jurisdiction over secondarily-affected worker benefits is most appropriately reviewed here. See e.g., Int'l Trading Co. v. United States, 281 F.3d 1268, 1274 (Fed. Cir. 2002) (explaining that this court "has expertise in addressing antidumping issues and deals on a daily basis with the practical aspects of trade practice."). In cases involving Customs and trade related matters, other circuits have dismissed suits that impinged upon the jurisdiction of this court.[8] See United States v. Universal Fruits and Vegetables Corp., 2004 U.S. App. LEXIS 4991 (Mar. 17, 2004) (stating that the Ninth Circuit has previously held that "the jurisdiction of the Customs Court [now the Court of International Trade] is exclusive. Even when other, broadly-worded statutes seem to confer concurrent jurisdiction on the district courts, the exclusivity of Customs Court jurisdiction reflects a policy of paramount importance which overrides the literal effect of [other statutes].") (internal citations

---

[8] In Cornet Stores v. Morton, 632 F.2d 96, 98-99 (9th Cir. 1980), a presidential proclamation required to plaintiffs to pay an additional duty on merchandise they imported into the United States. The plaintiffs brought suit in a district court to recover those import surcharges. The district court dismissed the case and held that the matter was within the exclusive jurisdiction of the Customs Court, a decision which the appellate court affirmed. Id. Congress intended to ensure uniform administration of the customs laws and other statutes, see Jerlian Watch Co. v. United States Department of Commerce, 597 F.2d 687, 691 (9th Cir. 1979), and therefore, the appellate court held that the district court properly dismissed the case. Cornet Stores, 632 F.2d at 98-99. "Customs Court jurisdiction is not defeated because a statute or regulation serves other ends in addition to recognized customs purposes, so long as there exists 'a substantial relation to traditional customs purposes.'" Jerlian Watch Co., 597 F.2d at 691 (9th Cir. 1979).

omitted).

Finally, Labor's actions confirm that it acted with the understanding that secondarily-affected worker benefits are derived from both the NAFTA TAA and the NAFTA SAA. Plaintiffs filed one petition to apply for both primary and secondary benefits, Administrative Record at 2, and Labor conducted one investigation involving the same facts identified in the single petition that was filed and that is subject to this appeal. Labor published one notice of initiation concerning the petition. See Administrative Record at 4-5. Both the primary and secondary certification claims before the court involve the same injured parties and the same governmental agency reviewing the same record in this matter. One unified record, covering the agency's actions related to both primary and secondary certification, was certified published regarding its actions and the subject Petition. Labor's interorganizational materials require appeals to be taken to the CIT. Finally, Labor's published notices related to secondary benefits specifically refer to the NAFTA TAA and the NAFTA SAA, which amended section 223 of the Trade Act of 1974, as the basis for granting eligibility for such benefits. Thus, Labor's actions support Plaintiffs' contention that the agency acted pursuant to the requirements of NAFTA and the Trade Act of 1974, and its certification to this court further indicates its belief that this court has jurisdiction over the suit. Furthermore, there is no indication in the legislative history surrounding the NAFTA Implementation Act that Congress or the Administration intended to deny this court jurisdiction over secondary claims, as is here proposed by the Government.[9]

---

[9] This conclusion was confirmed by the Reform Act which amended assistance for workers by providing a more direct statutory basis for secondary claims under the NAFTA-TAA SAA, see 19 U.S.C. § 2272(b), and exclusive jurisdiction over appeals relating to both primary and secondary claims in the CIT.

Read together, the NAFTA Implementation Act and NAFTA SAA permit plaintiffs to bring their suit challenging Labor's denial of secondary benefit eligibility. Thus, pursuant to 28 U.S.C. § 1581(d)(1), this Court has jurisdiction over Plaintiffs' claims that Labor's failure to provide notice of the Affirmative Secondary Determination to affected workers was not in accordance with law.[10]

---

[10] In addition to the specific grant of jurisdiction over a party's challenge to a final determination by Labor arising under 19 U.S.C. § 2273, the court also has jurisdiction, pursuant to its residual jurisdiction 28 U.S.C. § 1581(i)(4), over actions pertaining to the administration and enforcement of that provision. Section 1581(i) grants jurisdiction in instances when no other subsection is available or provides inadequate remedy. See Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992). It provides that

> the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for
>
> (1)     revenue from imports or tonnage;
> (2)     tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
> (3)     embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
> (4)     administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.
>
> This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516a(a) of the Tariff Act of 1930.

28 U.S.C. § 1581(i); see also Consol. Bearings Co. v. United States, 348 F.3d 997, 1001-02 (Fed. Cir. 2003). Because the procedures for determining entitlement to secondary benefits under NAFTA are derived from the SAA accompanying the NAFTA Implementation Act, any procedural deficiencies must be considered under the court's residual jurisdictional grant.

Therefore, this court has jurisdiction to review any final determinations of the Secretary of Labor with respect to the eligibility of secondarily-affected workers for adjustment assistance pursuant to 28 U.S.C. § 1581(d) and matters regarding administration and enforcement of its determination regarding adjustment assistance to secondarily-affected workers pursuant to 28

U.S.C. § 1581(i)(4). <u>See</u> <u>e.g.</u>, <u>J.S. Stone, Inc. v. United States</u>, 297 F. Supp. 2d 1333, 1340-41.

Plaintiffs also argued that the existence of an implied right of action concerning secondarily-affected worker benefits arguably exists. <u>See</u> Plaintiff's Opposition at 8, n.3. This legal theory has not previously been presented to the court. In <u>Cort v. Ash</u>, 422 U.S. 66, 78, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975), the Supreme Court reviewed the doctrine of implied right of action and identified four criteria to be addressed when considering whether an implied right of action exists:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

<u>Id.</u>, 422 U.S. at 78 (internal quotation marks omitted).

The analysis described in <u>Cort</u> has since been focused to emphasize legislative intent. <u>See</u> <u>Suter v. Artist M.</u>, 503 U.S. 347, 364, 112 S. Ct. 1360, 118 L. Ed. 2d 1 (1992) ("The most important inquiry here . . . is whether Congress intended to create the private remedy sought by the plaintiffs."). The Court subsequently held that an implied right of action may be inferred from the "language of the statute, the statutory structure, or some other source . . . ." <u>Northwest Airlines v. Transp. Workers Union of America, AFL-CIO</u>, 451 U.S. 77, 94, 101 S. Ct. 1571, 67 L. Ed. 2d 750 (1981); <u>see</u> <u>also</u> <u>Thompson v. Thompson</u>, 484 U.S. 174,179, 108 S. Ct. 513, 98 L. Ed. 2d 512 (1988) ("The intent of Congress remains the ultimate issue, however, and 'unless this congressional intent can be inferred from the language of the statute, the statutory scheme, or some other source, the essential predicate for implication of a private remedy simply does not exist.'").

Plaintiffs claim that the four criteria are met in this case. First, Plaintiffs claim that they are of the class, dislocated workers, for whose benefit the relevant statutory provisions of the Trade Act of 1974, related to the NAFTA transitional adjustment assistance and secondary benefits, were enacted. Second, they claim that the Congressionally-approved NAFTA SAA provides explicit indication of a legislative intent to create the remedy here at issue. They argue that this is especially true because Congress approved the NAFTA SAA, and the NAFTA SAA should be considered a significant and appropriate "other source" of legislative intent giving rise to an implied right of action in this case. Third, Plaintiffs claim that finding an implied right of action as to issues related to secondary worker group benefits is consistent with the underlying purposes of the legislative scheme. Finally, they argue that the cause of action at issue is not one traditionally relegated to state law in an area basically the concern of the states. Rather, it is an area of express federal activity and action, in which the states act only and strictly as agents of the federal agency administering the law at issue. The court will not reach this issue because it

13

## IV
## Arguments

Defendant claims that, pursuant to USCIT R. 12(b)(5), the court must dismiss this action because Plaintiffs have failed to state a claim upon which relief can be granted. Its claim that this court lacks jurisdiction is resolved above. Defendant alternately claims that, assuming this court possesses jurisdiction, no justiciable issue exists because Plaintiffs received the relief they requested; thus, the case is rendered moot. Defendant also argues that Plaintiffs abandoned their original claim when they opposed Defendant's Motion for Voluntary Remand.

Plaintiffs claim that their Complaint and First Amended Complaint provide proper notice of issues raised in this appeal of Labor's negative determination and that this court has jurisdiction over all claims raised.

## V
## Standard of Review

The court's grant of a motion to dismiss is proper "where it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief." Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1565 (Fed. Cir. 1988) (internal citation omitted). When reviewing a motion to dismiss, the court examines a plaintiff's complaint in order to determine whether it sets forth facts sufficient to support a claim. See NEC Corp. v. United States, 20 CIT 1483, 1484 (1996). Plaintiffs must give "fair notice of what their claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), but need not set out in detail the facts on which their claim is based. The court assumes "all well-pled

---

finds an express statutory grant of jurisdiction over Labor's determination of secondarily-affected worker group benefits.

14

factual allegations are true" and construes "all reasonable inferences in favor of the nonmovant." Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991).

Ultimately, it is not necessary that the specific relief requested by Plaintiffs be awarded, rather the court need only ascertain that some relief is available. See Doe v. United States, 753 F.2d 1092, 1104 (D.C. Cir. 1985); Lada v. Wilkie, 250 F.2d 211, 215 (8th Cir. 1957). That recovery is remote or unlikely is an insufficient reason to dismiss an action. See Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).

## VI
## Discussion

Plaintiffs claim that their Complaint properly provided notice of all claims that have been raised and briefed. Plaintiffs argue that they pled in the alternative and that "Labor's failure to comprehend the nature of an alterative argument does not remove that argument from the Court's consideration, as and if necessary." Plaintiff's Opposition at 3. They argue that their First Amended Complaint alleges relevant facts that provide sufficient notice to Labor that its determination on the petition as a whole was being challenged.

The court's consideration of a claim's sufficiency is limited to the facts stated on the face of the Complaint, documents appended to the Complaint and documents incorporated in the Complaint by reference. See Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). This court's rules as well as the Federal Rules of Civil Procedure require that in order for Plaintiffs to make a legal claim in this court, they must suffer an actual injury and have exhausted all of their administrative remedies. See Black's Law Dictionary (7th ed. 1999) (defining standing); USCIT R. 12(b); Fed. R. Civ. Pro. 12(b). On a motion to dismiss, whether on the

15

grounds of lack of jurisdiction over the subject matter, or for failure to state a cause of action, Plaintiffs' allegations are presumed true and their Complaint is liberally construed in their favor. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Even when a court is afforded a statutory grant of jurisdiction, the parties must still meet the requirements of standing, see 3V, Inc. v. United States, 23 CIT 1047, 1048 (1999), which are determined by the court. See Whitmore v. Arkansas, 495 U.S. 149, 154, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990).

Plaintiffs' administrative remedies were exhausted once Labor issued its final negative determination denying their petition. 19 U.S.C. § 2395(a) (2000) (granting workers aggrieved by a final determination of the Secretary of Labor under section 2273 or 2331(c) may, within sixty days after notice of that determination commence a suit in the CIT for review of that determination). Thus, what remains for the court to examine regarding Plaintiffs' pleading is whether they have an injury meant to be regulated by the statute at issue and an actual case and controversy.[11] Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed. 2d

---

[11] The Supreme Court in Lujan, stated that:

> The irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical'. . . . Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court' . . . . Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

Lujan, 504 U.S. at 560-61 (internal citations omitted). If a claim fails the Article III criteria described in Lujan, the Court must dismiss the claim as non-justiciable, regardless of a statutory grant of jurisdiction. See 3V, Inc., 23 CIT at 1048.

351 (1992).

## A
## Plaintiffs' Complaint and First Amended Complaint Meet Notice Pleading Requirements and USCIT R. 8

Ms. Margaret Miller, initiated this matter as a *pro se* litigant by letter to the court on July 16, 2002. Judicial review of Labor's decision regarding eligibility for TAA benefits requires that the parties, pursuant to USCIT R. 7, file a complaint and an answer. The Clerk of the Court for the CIT deemed Ms. Miller's letter as the filing of a complaint. On October 3, 2002, Defendant filed its first motion to dismiss, which was denied. Former Employees of Quality Fabricating, Inc. v. United States, 259 F. Supp. 2d. 1282 (CIT 2003). On October 9, 2002, Plaintiffs' motion to proceed *in forma pauperis* was granted and counsel appointed to serve generally on behalf of Plaintiffs. On March 11, 2003, Plaintiffs filed their First Amended Complaint and on March 19, 2003, Defendant filed an Answer to that Amended Complaint.

Defendant states that "Plaintiffs' opposition to [its] motion to dismiss offers no explanation as to why this highly specific prayer for relief set forth in the motion for judgment upon the administrative record, is wholly absent from the complaint." Defendant's Reply at 7. It states that "Plaintiffs' multiple, yet unexplained, references to 'notice pleading' . . . are unavailing." Id. (internal citations omitted).

Federal Rule of Civil Procedure 8(a), which provides for a simplified standard for pleading, permits the court to dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). USCIT R. 8(a) is the

17

same as the Federal Rule of Civil Procedure Rule 8(a).[12]  When the court appraises the sufficiency of a complaint it follows the rule "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80, 84 (1957) (footnote omitted).

The Federal Rules of Civil Procedure govern the substantive requirements for a Complaint.  Pursuant to Rule 8, a pleading shall contain:

> (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

Fed. R. Civ. Pro. 8.

In Conley, 355 U.S. at 47-48, the Supreme Court stated that the Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." They only require a short and plain statement of the claim that gives the "defendant notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 47 (footnote omitted). Although the rules require that pleadings be concise and direct, they need not be internally consistent. Federal Rule of Civil Procedure 8(e) states that:

---

[12] Pursuant to USCIT R. 1, scope of the rules, "when a procedural question arises which is not covered by these rules, the court may prescribe the procedure to be followed in any manner not inconsistent with these rules.  The court may refer for guidance to other courts. . . ."  Thus, when this court or an appellate court have not discussed previously one of the rules of this court, which is identical to the Federal Rules of Civil Procedure, the court looks to the decisions of other courts which have dealt with the civil rule at issue. See Zenith Radio v. United States, 823 F.2d 518, 521 (Fed. Cir. 1987).

18

[a] party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. . . .

Plaintiffs are not required to plead a prima facie case in their Complaint. See Swierkiewicz, 534 U.S. at 512. When a federal court reviews the sufficiency of a complaint its task is limited; the court reviews the complaint in order to determine whether the claimant is entitled to offer evidence to support its claims. See id..

Under notice pleading requirements, Plaintiffs' Complaint must provide a short and plain statement of the grounds upon which the court's jurisdiction depends, which it does. Under a subheading entitled Jurisdiction, Plaintiffs' First Amended Complaint states that "[t]his Court has jurisdiction over this appeal of the Defendant's decision denying eligibility to apply for TAA benefits under 28 U.S.C. § 1581(d)(1) (2000) and 19 U.S.C. § 2395(c) (2000)." Plaintiffs' First Amended Complaint at 2, ¶2. This is a sufficient statement of their case and gives Defendant proper notice that its final determination is challenged.

To comply with the Federal Rules of Civil Procedure, Plaintiffs' Complaint and First Amended Complaint must show that they are entitled to relief. In Plaintiffs' First Amended Complaint, they alleged that "[o]n July 5, 2001, pursuant to Section 223 of the Trade Act of 1974, 19 U.S.C. § 2273, Plaintiffs filed a petition for TAA benefits with the Employment and Training Administration of the United States Department of Labor ("DOL"), on behalf of certain former employees of Quality Fabricating, Inc." Id. at 2 ¶ 6. They also alleged that "[o]n or about May 9, 2002, the DOL issued a negative determination regarding eligibility in response to the

19

above petition, denying the Plaintiffs eligibility for trade adjustment assistance under Section 223 of the Trade Act of 1974, 19 U.S.C. § 2273. The determination was published in the Federal Register on May 17, 2001. See Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance, 67 Fed. Reg. 35,140, 35,142 (May 17, 2002)." Id. at 3 ¶ 9. Plaintiffs claim that "[t]he DOL's denial of Plaintiffs' petition for certification of eligibility to apply for TAA benefits was not supported by substantial evidence and was not made in accordance with law," Id. at 3, ¶13.

These allegations describe the filing of the petition, which sought both primary and secondary certification, and publication of the notice that denied the petition as a whole. The allegations are not limited to primary certification. Plaintiffs' also claimed in their Complaint that their "petition merits further investigation of the facts concerning the impact of imported articles on the decline in sales or production in question and whether there, in fact, was a shift in production of articles produced by Plaintiffs' employer." Id. at 3 ¶14. Additionally, in order to meet the Federal Rules of Civil Procedure's pleading requirements, Plaintiffs must make a demand for judgment for the relief sought. The Rules, however, permit the pleader to demand relief in the alternative or of several different types. Plaintiffs' prayer for relief first asks the court to "[examine] the administrative record created by the DOL to make the determination as to whether the DOL properly conducted its investigation into the impact of foreign competition on Quality Fabricating, Inc." Id. at 4 ¶ 9. This requested form of relief requires an examination of the record as a whole. "Because the record certified by Labor is a single record covering Labor's actions on the petition, i.e., all aspects of both the Negative Primary Certification and the Affirmative Secondary Certification, the requested relief necessarily includes scrutiny of all

20

aspects of the documented actions, <u>viz.</u>, all actions, (including whether proper notice was provided) related to the Negative Primary Certification and the Affirmative Secondary Determination." Plaintiff's Opposition at 5.

Plaintiffs' Complaint requests that the court issue an order that either (i) overturns the DOL's decision and grants Plaintiffs' application for TAA and NAFTA-TAA benefits; or (ii) remands this case to the DOL for further investigation. This second requested form of relief contemplates an alternative remedy sought by Plaintiffs in their Motion for Judgment on the Agency record, seeking either a court ruling awarding benefits, or a remand for further consideration.

Plaintiffs also seek attorney's fees and such "additional and further relief to which Plaintiffs may be entitled." Plaintiffs' First Amended Complaint at 4 ¶ d**.** Their last request for relief contemplates a court order that Labor provide all forms of proper notice and the full scope of undiluted benefits related to the Affirmative Secondary Determination – related to all claims that properly may be before the Court. Thus, Plaintiffs' request also contemplates the court fashioning an appropriate remedy.

The Court of International Trade possesses "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585 (2000); <u>AK Steel Corp. v. United States</u>, 281 F. Supp. 2d 1318, 1323 (2003). When the court sits in equity it is not limited solely to the language of the pleadings, especially when the pleadings contain prayers in the alternative. <u>See</u> <u>Chicago & E. I. R. Co. v. Illinois C. R. Co.</u>, 261 F. Supp. 289, 307 (N.D.Il. 1966). Instead the court may consider both the legal claims and the equitable claims before it. <u>See</u> Wright & Miller, <u>Federal Practice and Procedure</u>: Civil 2d § 1283 at 532 (1990)

(quoting Federal Rule of Civil Procedure 8(e)).

Plaintiffs' Complaint and First Amended Complaint were filed before the administrative record was provided to them. The court construes the allegations in Plaintiffs' First Amended Complaint in the light most favorable to the Plaintiffs. Plaintiffs claim that they "prepared their pleadings to be broad in scope, encompassing all possible claims arising from or related to the published negative determination." Plaintiffs' Opposition at 6. They claim that their "allegations address the Petition, without limitation, and the relief that is sought included 'such additional and further relief to which Plaintiffs may be entitled.'" Id. at 6. Thus, they argue that the issues raised and briefed in the Motion to Dismiss fall within the purview of the allegations pled in the First Amended Complaint.

Plaintiffs' Complaint and First Amended Complaint are notice pleadings. The First Amended Complaint gives notice that the Plaintiffs challenge the notice published by Labor in the Federal Register on May 17, 2002. The notice published in the Federal Register states that Labor has denied "the petition" filed by the Quality Fabricating, Inc. workers. Plaintiffs' Motion for Judgment on the Agency Record at 11-12. That petition sought certification either as a primarily-affected worker group or as a secondarily-affected worker group. Notice of an appeal of Labor's published determination on the petition necessarily gives notice that claims concerning both the determination concerning primary certification and secondary certification may be raised and addressed.[13]

---

[13] If Plaintiffs' Complaints had failed to specify the allegations in a manner that provided Defendant sufficient notice, it could have moved for a more definite statement under Rule 12(e) before responding. Swierkiewicz, 534 U.S. at 514. Notice pleading focuses litigation on the merits of a claim and "[rejects] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading

22

The court has not yet determined whether Plaintiffs are entitled to any of the relief requested. In order to do so, the court must necessarily scrutinize Labor's actions and rule on both the Plaintiffs' Motion for Judgment upon the Agency Record and the Defendant's Motion for a Voluntary Remand. However, Labor had sufficient notice of the challenged determination and any claims that might flow from that determination from Plaintiffs' Complaint and First Amended Complaint.

**B**
**Plaintiffs' Claims Are Not Moot Because A Justiciable Issue Still Exists**

Defendant claims that even if this court possesses jurisdiction, no justiciable issue exists because Plaintiffs received relief, in the form of secondary-affected worker certification by Labor, thus, rendering this case moot. Dismissal for failure to state a claim is proper only where plaintiff can prove no set of facts which would entitle him to relief. See Constant, 848 F.2d at 1565. A case is not rendered moot if a portion of the Plaintiff's claims or injuries are redressed by the Defendant prior to judicial review. See NEC Corp., 151 F.3d at 1369. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 895 (1969) (internal citations omitted).

Plaintiffs, in their Motion for Judgment on the Agency Record claim that Labor's alleged lack of sufficient evidence to support their Negative Primary Certification, was an alternative issue. They said it was reached only if the Court found proper Labor's alleged failure to provide adequate notice to the Quality Factory, Inc. workers of the Affirmative Secondary Determination. Plaintiff's Motion for Judgment on the Agency Record at 21-28. The Defendant has not

---

is to facilitate a proper decision on the merits." Conley, 355 U.S. at 48.

23

submitted evidence cognizable by the court showing that Plaintiffs received any or all relief that Plaintiffs claim are available to them.[14]

## C
## Plaintiffs' Motion for Judgment on The Agency Record did not Abandon Any of Their Claims

Defendant also argues that Plaintiffs "abandoned" their claim concerning the lack of evidence supporting the Negative Primary Certification, the second of the two claims briefed by Plaintiffs, "when they vigorously opposed our motion for voluntary remand." Defendant's Motion at 7. In their Reply brief, Defendant claims that "any claim which is not pressed is deemed abandoned. De Laval Seperator Co. v. United States, 511 F. Supp. 810, 812 (CIT 1981)."[15] Defendant's Reply at 6.

Plaintiffs state that they have not waived or abandoned any claims they made or rights they may have in their appeal to this court. Waiver of a right or privilege must ordinarily be evidenced by an *intentional relinquishment* or abandonment of that right or privilege. See

---

[14] On April 9, 2004, Defendant filed a Motion for Leave to File a Status Report and Status Report. In that Motion, Defendant alleged that an attached letter was sent by Labor to the Plaintiffs and that the letter was relevant to its Motion to Dismiss. The Motion included no proper foundation for the attachment, and the court, therefore, orally denied the motion and refused to consider the letter during oral argument.

[15] In De Laval, the court ruled on a motion for summary judgment submitted by the defendant, United States. The plaintiff in the case claimed that its merchandise qualified for duty free treatment. Defendant filed a motion for summary judgment claiming that the court's previous decision involving De Laval was stare decisis. In the preceding case, the plaintiff had the opportunity to present evidence with respect to its claims. Additionally, some evidence with respect to its merchandise was adduced by plaintiff through the testimony of a witness. The court stated that the witness had previously discussed the merchandise and in the next sentence stated that "[i]t is axiomatic that any claim which is not pressed is deemed abandoned." De Laval, 1 C.I.T. at 146 (1981). This case is not procedurally analogous to the case at hand. Moreover, Defendant's claim that the opposition to a motion is an abandonment of a claim on the basis of the sentence in De Laval, is arguable frivolous.

24

<u>Millmaster Int'l, Inc. v. United States</u>, 57 CCPA 108, 111 (1970). Defendant's premise that Plaintiffs' abandoned their claim is neither supported by the law's requirements nor Plaintiffs' actions. Plaintiffs have never stated that they abandoned claims made in either their Complaint or First Amended Complaint. Moreover, neither law nor logic links Plaintiffs' alleged abandonment of a claim to Plaintiffs' opposition to Defendant's motion.

Plaintiffs state that they opposed Defendant's Motion for Voluntary Remand because they claimed that remand for the purposes requested by Labor was neither necessary nor appropriate if the court agreed with their claim that Labor failed to provide proper notice of Plaintiffs certification as a group of secondarily-affected workers, and Plaintiffs attendant ability to apply for benefits. While the court has yet to rule on both Plaintiffs' Motion for Judgment on the Agency Record and Defendant's Motion for Voluntary Remand, Plaintiffs' opposition to a remand in and of itself does not waive the claims Plaintiffs made in either their Motion or Complaints currently pending before this court.

**D**
**Labor's Notice of Affirmative Determination Regarding Plaintiffs' Secondarily-Affected Status**

Labor also claims that no justiciable issue remains in this case because, on September 10, 2003, the agency published a notice concerning its May 9, 2002, affirmative determination secondarily-affected worker group status in the Federal Register. Defendant's Motion at 8, Attachment A. Labor says that it "renotified" the state officials of the determination.

Plaintiffs argue that Labor's claim that it "renotified" the state officials is incorrect. During oral argument, and in their brief, Plaintiffs averred that they had examined the administrative record numerous times and that it contained no evidence that Labor ever originally

25

notified the state authorities of the Affirmative Secondary Determination either when it was made in 2002, or at any time thereafter.  Plaintiffs argue that Defendant's present claim that Labor has now provided proper notice to the state authorities of the Affirmative Secondary Determination has an insufficient evidentiary basis and is not part of the administrative record. Plaintiffs state that the materials appended to Defendant's Motion include a faxed document that has multiple fax transmission lines and that none of the fax transmittal lines provides any evidence of transmission to the state authorities, and cannot reasonably be relied upon by the court to support Defendant's contention.  Defendant has not provided competent evidence that no justiciable issue remains in this case; this argument can not even be considered by the court.[16]

---

[16] Plaintiffs also claim that even if Labor sent a copy of its 2002 determination to its state agents, the passage of more than 16 months raises questions regarding the validity of the notice as well as its timeliness.  Plaintiffs also argue that belated publication in the Federal Register neither provided them with proper notice nor afforded them complete relief.

Plaintiffs enumerated in their Motion for Judgment on the Agency Record the types and form of notice required by Labor's own procedures and policies, but which they claim Labor failed to provide.  These include: (1) publication of the notice in the Federal Register; (2) facsimile transmittal of the final determination to the State NAFTA-TAA Coordinator "within 24 hours after the Certifying Officer has signed it;" (3) notice to the petitioners; (4) notice to the company contact person; and (5) notice to the Office of Worker Retraining and Adjustment Programs. Plaintiff's Motion at 14,  App. 5 (App. A ¶ 4).  Plaintiffs say that the State NAFTA-TAA coordinator is then required to provide: (1) notice to workers covered by an affirmative finding regarding qualification as a secondary firm that they are eligible to apply for benefits; and (2) notice to the State Dislocated Worker Unit or the affirmative determination, in order to ensure that rapid response and basic readjustment services are made available to all secondarily-affected workers.
See Plaintiff's Motion at 15, App. 5.

Plaintiffs sought relief in the form of measures to "permit all affected workers to avail themselves, retroactively and prospectively, of all benefits to which they would have been eligible has they received proper notice of the Affirmative Secondary Determination, without any limitation due to the passage of time." Plaintiffs' Motion at 29.  Plaintiffs claim that the Federal Register notice on September 10, 2003, fails to conform to Labor's own requirements concerning publication and other forms of required notice.

Once again, the court can not reach this issue because the Defendant has not submitted competent evidence supporting its Motion to Dismiss.

26

## VII
## Conclusion

The dismissal standard is extraordinary and viewed with disfavor. In this case, Defendant has failed to prove that no set of facts remain which would entitle Plaintiff to relief. <u>See</u> <u>Constant</u>, 848 F.2d at 1565. Plaintiffs have given the Defendant fair notice of what their claims are and the grounds upon which they rest. The standards for dismissal under the court's rules are not met by the facts of this case. Accordingly, the Defendant's Motion is denied.

   /s/ Evan J. Wallach   

Evan. J. Wallach, Judge

Dated: May 11, 2004
New York, New York