# United States Court of Appeals for the Federal Circuit

05-1486


FORMER EMPLOYEES OF QUALITY FABRICATING, INC.,

Plaintiff-Appellee,

v.


UNITED STATES SECRETARY OF LABOR,

Defendant-Appellant.


Adam H. Gordon, Collier Shannon Scott, PLLC, of Washington, DC, argued for plaintiff-appellee. With him on the brief was John B. Brew.

Stephen C. Tosini, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Gary E. Bernstecker, Attorney, Office of the Solicitor, United States Department of Labor, of Washington, DC.

Appealed from: United States Court of International Trade

Judge Evan J. Wallach

# United States Court of Appeals for the Federal Circuit

05-1486

FORMER EMPLOYEES OF QUALITY FABRICATING, INC.,

Plaintiff-Appellee,

v.

UNITED STATES SECRETARY OF LABOR,

Defendant-Appellant.

_____

DECIDED:  May 24, 2006

_____

Before NEWMAN, RADER, and PROST, <u>Circuit Judges</u>.

RADER, <u>Circuit Judge</u>.

The United States Court of International Trade ordered the Department of Labor (Labor) to notify former employees of Quality Fabricating, Inc. (Quality) that they qualify for secondarily-affected worker benefits, to explain these benefits to the former Quality employees, and to provide the court with status updates demonstrating Labor's compliance with the court's order. <u>Former Employees of Quality Fabricating, Inc. v. U.S. Dep't of Labor</u>, No. 02-00522 (Ct. Int'l Trade 2005) (<u>Order</u>). Because the Court of International Trade lacks jurisdiction to review Labor's determinations with respect to secondarily-affected worker benefits, this court vacates the <u>Order</u> and remands with instructions to dismiss.

I.

On June 28, 2001, several former Quality employees filed a petition with Labor seeking unemployment benefits stemming from Quality's loss of business with firms that either shifted production to Mexico or Canada, or lost sales because of increased imports from Mexico or Canada. The former Quality employees sought unemployment benefits under one of two programs: (1) benefits as "primarily-affected workers" under the North American Free Trade Agreement-Transitional Adjustment Assistance program (NAFTA-TAA); or (2) benefits as "secondarily-affected workers" under the Job Training Partnership Act (JTPA) or its successor, the Workforce Investment Act (WIA). From a former employee's perspective, these programs provide substantially identical benefits. Nonetheless, these programs apply to different categories of workers.

Before losing employment, primarily-affected workers had employers that were "directly affected" by increased imports from or shifts of production to other countries. The federal government provides benefits targeting primarily-affected workers under various Transitional Adjustment Assistance programs dating back to at least the Trade Act of 1974, codified at 19 U.S.C. § 98. See Hampe v. Butler, 364 F.3d 90, 91 (3d Cir. 2004) (describing the unemployment benefits provided under the Trade Act of 1974).

NAFTA provides a specific program, the NAFTA-TAA program, for those primarily-affected workers affected by shifts in production to or increased imports from Canada and Mexico. See 19 U.S.C. § 2331 (1993). The Trade Act of 2002 combined the benefits programs under NAFTA-TAA and the Trade Act of 1974

and expanded those programs to expressly provide for benefits to "adversely affected secondary workers." See Pub. L. No. 107-210, Div. A, Title I, § 123(a), 116 Stat. 944 (2002); 19 U.S.C. § 2272(b) (2002). In this case, the primarily-affected worker benefits under the NAFTA-TAA program fall within that Trade Act program.

In contrast to primarily-affected workers, before losing employment, secondarily-affected workers had employers that were "indirectly-affected" by increased imports from or shifts of production to other countries. These secondarily-affected workers had worked for employers that supplied materials and/or components to a primary firm. Unlike primarily-affected workers, secondarily-affected workers did not receive unemployment benefits under the Trade Act of 1974. Instead, the Statement of Administrative Action (SAA) gave Labor the authority to provide secondarily-affected worker benefits under the JTPA. See H.R. Doc. No. 103-159, at 672 (1993) ("[T]hrough administrative action, the Secretary of Labor will use existing authority under . . . the Job Training Partnership Act . . . to provide assistance to workers in secondary firms that supply or assemble products produced by firms that are directly affected.") (SAA); H.R. Rep. 103-361, at 92-93 (1993) reprinted in 1993 U.S.C.C.A.N. 2552, 2642-43 ("The Secretary of Labor will use existing authority under the [JTPA] program to provide similar assistance to workers in secondary firms that supply or assembly products directly affected by the NAFTA."). At the heart of the present appeal, the parties dispute whether the SAA and the NAFTA Implementation Act, codified at 19 U.S.C. § 3311, created a secondarily-affected

worker benefits program that was incorporated into the Trade Act of 2002 along with the NAFTA-TAA program.

In June, 2001, several former Quality employees filed a petition seeking benefits either as primarily-affected workers or as secondarily-affected workers. After investigation, Labor certified the employees as a secondarily-affected worker group that qualified for benefits under the JTPA / WIA. However, upon publication of findings in the Federal Register, Labor denied the petition as a whole, meaning that the group did not qualify either as primarily-affected or secondarily-affected. See Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance, 67 Fed. Reg. 35,142 (Dep't of Labor May 17, 2002). Thereafter, one of the former Quality employees sent a letter of complaint to the Court of International Trade requesting an appeal of Labor's negative determination.

While the case was pending before the Court of International Trade, Labor discovered that it had not published notice in the Federal Register of the secondarily-affected worker benefits certification. Accordingly, Labor published that notice for the first time. See Quality Fabricating, Inc., North Huntington, PA; Affirmative Finding Regarding Qualification as a Secondarily-Affected Worker Group Pursuant to the Statement of Administrative Action Accompanying the North American Free Trade Agreement (NAFTA) Implementation Act, 68 Fed. Reg. 53,397 (Dep't of Labor, Sept. 10, 2003). Labor claims to have also provided other forms of notice both before and after discovering the error in the Federal Register. For instance, Labor claims to have faxed a copy of its

determination to the state coordinator in Pennsylvania. At trial, however, Labor could not lay a proper foundation for this evidence. Believing proper notice had, at that point, been given for the secondarily-affected worker certification and noting that benefits as secondarily-affected workers were substantially identical to benefits as primarily-affected worker benefits, Labor moved to dismiss the case as moot. Alternatively, Labor moved to dismiss the case for lack of jurisdiction because the Court of International Trade's jurisdiction under 28 U.S.C. §§ 1581(d)(1), (i)(4) encompasses only disputes under the Trade Act. Labor asserts that the Trade Act did not incorporate the SAA program for secondarily-affected workers.

The trial court disagreed with Labor on both grounds. The Court of International Trade instead asserted jurisdiction to review the secondarily-affected worker benefits issue because the SAA and NAFTA-TAA programs are part of a unified program that falls within the court's particular expertise in trade matters. Former Employees of Quality Fabricating, Inc. v. U.S. Dep't of Labor, 343 F. Supp. 2d 1272, 1279 (Ct. Int'l Trade 2004) (Trial Court Decision). The trial court also found that the notice issue was not moot because, even with republication in the Federal Register, Labor had not provided proper notice under its own internal procedures. Id. at 1287. Thus, the trial court ruled for the former Quality employees on the merits and ordered Labor to "exercise all reasonable efforts" to identify the eligible employees, to explain these benefits to the former employees, and to provide the court with status updates demonstrating its compliance with the Order. Order, slip op. at 1-2. The present appeal followed.

This court reviews decisions of the Court of International Trade about jurisdiction without deference. Xerox v. United States, 423 F.3d 1356, 1359 (Fed. Cir. 2005) (citations omitted). In general, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued." Awad v. United States, 301 F.3d 1367, 1372 (Fed. Cir. 2002) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). Only an express statute suffices to waive the sovereign immunity of the United States. West v. Gibson, 527 U.S. 212, 217 (1999); Yancheng Baolong Biochem. Corp. v. United States, 406 F.3d 1377, 1382 (Fed. Cir. 2005) (explaining that waivers of sovereign immunity must be "unequivocally expressed" in statutory language) (quoting Lane v. Pena, 518 U.S. 187, 192 (1996)). A waiver statute may assign specific causes of action to specific courts as a condition of consent. See Humane Soc'y. of United States v. Clinton, 236 F.3d 1320, 1328 (Fed. Cir. 2001); Quality Tooling, Inc. v. United States, 47 F.3d 1569, 1576-77 (Fed. Cir. 1995); NEC Corp. v. United States, 806 F.2d 247, 249 (Fed. Cir. 1986). Thus, this court must determine whether a statute unequivocally granted a waiver for adjudication of Labor's eligibility determinations with respect to secondarily-affected worker groups in the Court of International Trade.

In 1980, Congress sought to improve upon the judiciary's ability to handle increasingly complex international trade litigations by replacing the outdated United States Customs Court with a full Article III trial court, the Court of International Trade. See Customs Courts Act of 1980, Pub. L. No. 96-417, 94

Stat. 1727 (codified primarily at scattered sections of 19 and 28 U.S.C.). Congress intended for this newly formed court to reflect:

> The re-emphasis and clarification of Congress' intent that the expertise and national jurisdiction of the Court of International Trade . . . be exclusively utilized in the resolution of conflicts and disputes arising out of the tariff and international trade laws, thereby eliminating the present jurisdictional conflict between [the Court of International Trade] and the federal district . . . courts.

Gregory C. Sisk, The Trial Courts Of The Federal Circuit: Diversity By Design, 13 Fed. Cir. B.J. 241, 254 (2003) (quoting H.R. Rep. No. 96-1235, at 28 (1980), reprinted in 1980 U.S.C.C.A.N. 3729, 3739). Because NAFTA is, in effect, a body of trade law (specifically regulating trade between the United States, Canada and Mexico), the statutes implementing NAFTA vested the Court of International Trade with considerable jurisdiction over litigations arising under NAFTA, including Labor's trade adjustment assistance certifications for primarily-affected workers. See 28 U.S.C. § 1581(d) (vesting the Court of International Trade with exclusive jurisdiction over Labor's adjustment assistance determinations under the Trade Act); 19 U.S.C. § 2331(c)(2) (1993) (stating that persons petitioning for NAFTA-TAA benefits who are denied affected worker status under the subsection should be automatically evaluated for benefits under the Trade Act of 1974); see also Former Employees of Sonoco Prods. Co. v. Chao, 372 F.3d 1291 (Fed. Cir. 2004) (reviewing denied petitions for benefits under NAFTA-TAA); Former Employees of Barry Callebaut v. Chao, 357 F.3d 1377 (Fed. Cir. 2004) (same). The relevant jurisdictional provisions for the Court of International Trade do not, however, waive sovereign immunity nor grant that

court jurisdiction to review the determination, administration, and enforcement of all trade adjustment assistance certifications by Labor.

Section 1581(d) authorizes the Court of International Trade to review "any final determination of the Secretary of Labor under section 223 of the Trade Act of 1974 with respect to the eligibility of workers for adjustment assistance under such Act." Similarly, section 1581(i)(4) limits the court's review to Labor's administration and enforcement of Trade Act determinations under § 1581(d). Thus, 28 U.S.C. §§ 1581(d), (i)(4) only authorize the trial court to review Labor's actions here if secondarily-affected worker benefits under the SAA fall within the scope of the Trade Act as amended by the NAFTA Implementation Act.

In this regard, nothing in the NAFTA Implementation Act provides secondarily-affected worker benefits under the Trade Act. Rather, 19 U.S.C. § 3311 simply approves the NAFTA with Canada and Mexico, and the SAA proposed to implement the agreement.[1] There is no mention of secondarily-affected worker benefits in § 3311 at all. Thus, some other statute must provide

---

[1]     The Omnibus Trade and Competitiveness Act of 1988, codified at 19 U.S.C. § 2903, and section 151 of the Trade Act of 1974, codified at 19 U.S.C. § 2191, required the President to submit a statement of administrative action to Congress because the North American Free Trade Agreement was negotiated using fast track provisions under these acts. See Cindy G. Buys, An "Authoritative" Statement of Administrative Action: A Useful Political invention Or A Violation Of The Separation Of Powers Doctrine?, 7 N.Y.U. J. Legis. & Pub. Pol'y 73, 80 (2003) (describing the relationship between SAAs and trade agreements, including NAFTA, that are established under the fast track provisions of U.S. trade law). Specifically, section 2903 required the President:

(B)  after entering into the agreement [to submit] a document to the House of Representatives and to the Senate containing a copy of the final legal text of the agreement, together with—
(i)     a draft of an implementing bill, [and]
(ii)    a statement of any administrative action proposed to implement the trade agreement . . . .

the necessary waiver for adjudication of the secondarily-affected worker benefits issue in the Court of International Trade to be proper.

Turning to the SAA, the SAA explicitly distinguishes between primarily-affected worker benefits under the NAFTA-TAA program and secondarily-affected worker benefits under the JTPA. The SAA explains that only the NAFTA-TAA program was incorporated into the Trade Act. Specifically, the SAA states:

> First, sections 501 through 506 of the NAFTA implementing bill amend . . . the Trade Act of 1974 . . . to provide assistance for workers in firms that are directly affected by imports form or shifts in production to Mexico or Canada. Second, through administrative action, the Secretary of Labor will use <u>existing authority under . . . the Job Training Partnership Act ("JTPA") . . . to provide assistance to workers in secondary firms</u> that supply or assemble products produced by firms that are directly affected.

H.R. Doc. No. 103-159 at 672 (emphasis added). Thus, the SAA explicitly states that secondarily-affected worker benefits fall under the JTPA (succeeded by the WIA). <u>Id.</u> Primarily-affected worker benefits, on the other hand, fall under the Trade Act. <u>See</u> 19 U.S.C. § 2331(c)(2) (1993); <u>Former Employees of Chevron Prods. Co. v. U.S. Sec'y of Labor</u>, 279 F. Supp. 2d 1342, 1345 n.2 (Ct. Int'l Trade 2003) ("[T]he NAFTA-TAA statute requires that—where petitioning workers are found to be ineligible for NAFTA-TAA benefits—the Labor Department is to automatically evaluate their eligibility for benefits under the TAA statute.") Thus, the SAA does not place secondarily-affected worker benefits within the Trade Act along with the primarily-affected worker benefit program.

Because the SAA separates the secondarily-affected worker and primarily-affected worker programs and the NAFTA Implementation Act does not

incorporate the secondarily-affected worker program into the Trade Act, no statute waives immunity nor authorizes suit in the Court of International Trade with respect to Labor's determinations on secondarily-affected worker benefits. Indeed, the trial court concedes that neither the SAA nor the NAFTA Implementation Act, on their faces, grant jurisdiction over the secondarily-affected worker benefits claim. Trial Court Decision, 343 F. Supp. 2d at 1278. Without an express waiver of immunity and consent to suit in the Court of International Trade, the trial court lacks authority to proceed further.

This court recognizes that the NAFTA Implementation Act provides judicial review of NAFTA-TAA claims under the Trade Act in the Court of International Trade. This court also recognizes that Labor administers and enforces both primary and secondary claims, often in one combined petition. These aspects of trade law and policy, however, do not constitute an express statutory waiver of sovereign immunity and grant of jurisdiction to the Court of International Trade. Neither this court nor the trial court has authority to create a single coherent trade related program for both primarily- and secondarily-affected workers. Moreover, neither this court nor the trial court may create a unitary plan for judicial review of both programs in a single forum absent express statutory authorization. 28 U.S.C. §§ 1581(d), (i)(4) do not provide that authority.

As previously discussed, the SAA separated the primarily-affected worker benefit program under the Trade Act from the secondarily-affected worker benefit program under the JTPA, and the NAFTA Implementation Act did not incorporate the secondarily-affected worker benefit program into the Trade Act. Thus, no

statute requires Labor to administer a single all inclusive benefits program subject to the trial court's jurisdiction. Even if Labor finds administrative efficiency in handling claims for both forms of benefits in one unified petition with one unified investigation, administrative convenience does not create an express statutory waiver for jurisdiction.

For the aforementioned reasons, the Court of International Trade did not possess jurisdiction to consider Labor's determination on secondarily-affected worker benefit eligibility. As for primarily-affected worker benefits, the trial court specifically confirmed that the employees disclaimed any intent to seek primary certification. Because the primarily-affected worker benefit claim was no longer a part of the case when the trial court issued its Order, the trial court did not have any jurisdiction over any part of the case.

IV.

In a final note, the Court of International Trade, under 28 U.S.C. § 2643(c)(2), has no authority to "grant an injunction or issue a writ of mandamus in any civil action commenced to review a final determination of the Secretary of Labor." Here, the trial court's Order directed Labor to take specific steps to notify the employees, explain the benefits to the employees, and report back with status updates. Further, the trial court apparently extended its Order to reach federal government agencies and resources beyond Labor by directing utilization of all available "government resources" to locate and provide notice to affected employees. See Order, slip op. at 2. However, given the lack of jurisdiction in the Court of International Trade over this case, this court need not reach the

question of whether there is any basis upon which the <u>Order</u> of the Court directed to the Secretary could possibly be sustained.

V.

For the reasons stated, this court concludes that the Court of International Trade lacks jurisdiction to review Labor's determinations with respect to secondarily-affected worker benefit eligibility.  The <u>Order</u> of the trial court is hereby vacated, and the case is remanded with instructions to dismiss for lack of jurisdiction.

COSTS

Each party shall bear its own costs.

<u>VACATED and REMANDED</u>