Slip Op. 06-171

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INDEPENDENT STEELWORKERS UNION, | : |
| | : |
| Plaintiff, | : Before: Richard K. Eaton, Judge |
| v. | : |
| | : Court No. 04-00492 |
| UNITED STATES SECRETARY OF LABOR, | : |
| | : |
| Defendant. | : |

OPINION AND ORDER

[Plaintiff's motion for judgment upon the agency record denied in part. Defendant's motion to dismiss denied. Case remanded to United States Department of Labor to assemble and submit administrative record.]

Dated: November 17, 2006

*Stewart and Stewart* (*Terence P. Stewart*, *J. Daniel Stirk*, and *Sarah V. Stewart*), for plaintiff.

*Peter D. Keisler*, Assistant Attorney General, Civil Division, United States Department of Justice; *David M. Cohen, Director*, Civil Division, Commercial Litigation Branch, United States Department of Justice; *Patricia M. McCarthy*, Assistant Director, International Trade Section, Civil Division, Commercial Litigation Branch, United States Department of Justice (*Claudia Burke*), for defendant.

Eaton, Judge: This matter is before the court on plaintiff Independent Steelworkers Union's ("plaintiff" or "ISU") motion for judgment upon the agency record pursuant to USCIT Rule 56.1, and defendant United States' ("defendant" or "United States") motion on behalf of the United States Department of Labor

("Labor" or the "Department") to dismiss Count IV of plaintiff's complaint for lack of subject matter jurisdiction pursuant to USCIT Rule 12(b)(1).

By its motion, plaintiff contests two actions taken by the Department. First, ISU disputes the Department's denial, after reconsideration, of the petition filed by employees of Weirton Steel Corporation ("Weirton") for certification as eligible for Trade Adjustment Assistance ("TAA") benefits beginning on April 24, 2004. *See* Weirton Steel Corporation, Weirton, West Virginia; Notice of Negative Determination Regarding Application for Reconsideration, AR at 195 (July 23, 2004) ("Reconsideration Denial") (citations to "AR" refer to the Administrative Record); Weirton Steel Corporation, Weirton, West Virginia; Notice of Negative Determination Regarding Application for Reconsideration, 69 Fed. Reg. 47,184 (Dep't Labor Aug. 4, 2004). Second, plaintiff takes issue with the Department's denial of its request to extend Weirton's previously existing certification, which expired on April 23, 2004. *See* Certification Regarding Eligibility to Apply for Worker Adjustment Assistance, 67 Fed. Reg. 22,112 (Dep't Labor May 2, 2002) ("2002 Certification"); Letter from the U.S. Dep't of Labor to Mr. Terence P. Stewart (Sept. 24, 2004) ("Labor Letter").

By its motion, the United States argues that the Reconsideration Denial was fully justified by the law and facts

and that the court lacks jurisdiction to hear Count IV of the complaint challenging Labor's denial of plaintiff's request to extend the already existing TAA certification.  For the following reasons, the court sustains the Reconsideration Denial, denies defendant's motion to dismiss Count IV of plaintiff's complaint and reserves judgment on plaintiff's challenge to the Department's denial of its request to extend the duration of the 2002 Certification until such time as Labor assembles and submits the administrative record for the requested extension.

BACKGROUND

On July 16, 2001, Labor initiated a TAA certification investigation in response to a petition filed on behalf of workers at Weirton engaged in the production of hot and cold rolled coated carbon steel.  *See* Pl.'s Mem. Supp. R. 56.1 Mot. J. Agency R. ("Pl.'s Mem.") at 4-5.  The Department's investigation led it to conclude that increased imports of articles competitive with those produced by Weirton "contributed importantly to the decline in sales or production and to the total or partial separation of workers of Weirton Steel."  *Id*. at 5.  As a result, on April 23, 2002, the Department certified as eligible for TAA benefits all workers at Weirton who became totally or partially separated from employment on or after July 3, 2000.  *See* 2002 Certification, 67 Fed. Reg. at 22,112.  The 2002 Certification

would remain in effect for two years from the date of certification, and thus expire on April 23, 2004.  *See* 19 U.S.C. § 2291 (2000).[1]

In May 2003, approximately one year prior to the expiration date of the 2002 Certification, Weirton filed for Chapter 11 bankruptcy.  *See* Pl.'s Mem. at 7; *see also* Weirton Steel Voluntary Pet. Chapter 11 Bankr., AR at 188.  After the filing, but prior to the expiration of the 2002 Certification, Weirton officials agreed to sell the company's assets (but not the company itself) to International Steel Group ("ISG").  *See* Pl.'s Mem. at 8.[2]

---

[1]     This provision provides, in pertinent part:

> Payment of a trade readjustment allowance
> shall be made to an adversely affected worker
> covered by a certification under subpart A of
> this part . . . if the following conditions
> are met:
>
>> (1) Such worker's total or partial
>> separation before his application
>> under this part occurred —— . . .
>>
>>> (B) before the expiration
>>> of the 2-year period
>>> beginning on the date
>>> on which the
>>> determination under
>>> section 2273 of this
>>> title was made . . . .

19 U.S.C. § 2291(a)(1)(B).

[2]     On April 22, 2004, just one day before the 2002 Certification was set to expire, the United States Bankruptcy Court for the Northern District of West Virginia approved the

(continued...)

As a result of the sale, Weirton retained some of its
workers to maintain the plant and ensure a smooth transition of
the facilities to the new owners.  *See* Pl.'s Mem. at 8.
Following execution of the sales agreement, both Weirton and ISU
contacted the Department and asked that the 2002 Certification be
extended beyond its April 23, 2004 termination date so that the
retained workers would be eligible to apply for TAA benefits upon
being released.[3]  *See id.*  This request, which was made prior to
the expiration of the 2002 Certification, was denied by the
Department "as a matter of policy . . . ."[4]  *Id.* ("The ISU

---

[2](...continued)
sale of Weirton's assets to ISG, thus making it clear that the
retained workers would not become separated from Weirton until
after the 2002 Certification expired.  *See* Order of Bankr. N.D.
W.Va. of 4/22/04.

[3]     Neither the date of the initial request for extension
of the 2002 Certification nor the denial of that request can be
determined from the record or the parties' submitted briefs.  As
far as the court can determine, the date for both the request and
denial was early 2004, sometime prior to March 9, 2004, the date
on which the company filed its 2004 petition for certification.

[4]     It does not appear to the court that the Department has
a policy to deny out-of-hand a petitioning group's request to
extend the duration of an existing certification.  While ISU
referenced two examples where the Department found reason to
extend the duration of a previously existing certification, it is
apparent that granting these extension requests is an often-
engaged-in practice.  *See, e.g.,* O/Z Gedney Co., Div. of EGS
Electrical Group, Terryville, CT; Amended Certification Regarding
Eligibility To Apply for Worker Adjustment Assistance, 69 Fed.
Reg. 43,454 (Dep't Labor July 20, 2004) (extending certification
expiration by one year so as to include a worker retained to be
engaged in activities related to the close-down process of a
production firm); Wiegand Appliance Division, Emerson Electric
Company, Vernon, AL; Amended Certification Regarding Eligibility
(continued...)

contacted the Department seeking to extend the expiration of the

[2002 Certification], but was told by Labor that as a matter of

policy, such extensions are not granted.").  As an alternative,

the Department suggested that Weirton's workers file a new TAA

petition.  *See id.*

On March 9, 2004, Weirton followed Labor's advice and filed

a new petition with the Department in the hope of obtaining

certification for the 300 retained workers.[5]  *See* Pet. Trade

_____

[4](...continued)
To Apply for Worker Adjustment Assistance, 68 Fed. Reg. 50,198
(Dep't Labor Aug. 20, 2003) (extending certification expiration
by five days so as to include workers completing tracking of
previous orders to customers).

[5]     A petition "shall be filed by a group of workers for a
certification of eligibility to apply for adjustment assistance
or by their certified or recognized union or other duly
authorized representative."  29 C.F.R. § 90.11(a) (2004).  The
petition shall include:

> (1) the name(s), address(es), and telephone
> number(s) of the petitioner(s);
>
> (2) the name or a description of the group of
> workers on whose behalf the petition is
> filed . . .;
>
> (3) the name and address of the workers' firm or
> appropriate subdivision thereof;
>
> (4) the name, address, telephone number, and title
> of an official of the firm;
>
> (5) the approximate date(s) on which the total or
> partial separation of a significant number or
> proportion of the workers in the workers' firm or
> subdivision began and continued, or threatened to
> begin, and the approximate number of workers

                                        (continued...)

Adjustment Assistance, AR at 2 ("2004 Petition").  In its petition, Weirton stated that it continued to suffer the effects of increased steel imports made from late 1997 through mid-2003. *See id.* Ex. B, AR at 6.

Upon receipt of plaintiff's petition, the Department conducted an investigation, but unlike in 2002, the Department issued a negative determination.  *See* Negative Determination Regarding Eligibility To Apply for Worker Adjustment Assistance And Alternative Trade Adjustment Assistance, AR at 101–02 ("2004 Determination"); Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance, 69 Fed. Reg. 31,134,

---

[5](...continued)
> affected by such actual or threatened total or partial separations;
>
> (6) a statement of reasons for believing that increases of like or directly competitive imports contributed importantly to total or partial separations and to the decline in the sales or production (or both) of the firm or subdivision;
>
> (7) a description of the articles produced by the workers' firm or appropriate subdivision, the production or sales of which are adversely affected by increased imports, and a description of the imported articles concerned.
>
> If available, the petition should also include information concerning the method of manufacture, end uses, and wholesale or retail value of the domestic articles produced and the United States tariff provision under which the imported articles are classified.

29 C.F.R. § 90.11(c)(1)–(7).

31,135 (Dep't Labor June 2, 2004). Labor based the denial on its conclusion that the Weirton workers failed to meet the statutory requirements for certification, specifically 19 U.S.C. § 2272(a)(2)(A)(iii) and § 2272(a)(2)(B)(i). *See* Def.'s Resp. Pl.'s R. 56.1 Mot. J. Agency R. and Def.'s Mot. Dismiss ("Def.'s Resp.") at 9-10. That is, the Department found that increased steel imports did not contribute importantly to the worker separations during the 2002-2003 investigatory period, and that steel imports had not led Weirton to shift its production to a foreign country. *See id.* at 10.[6] Based on its investigation, the Department concluded that Weirton's sales had actually increased from 2003 to 2004. *See* 2004 Determination, AR at 102. In addition, Labor found that, based on a survey of Weirton's major customers regarding their purchases of the products at issue, "[m]ost respondents either did not import or reported declining imports." 2004 Determination, AR at 102.

On June 18, 2004, ISU timely filed its written request that the Department reconsider its denial of Weirton's 2004 Petition.

---

[6]     The Department, in accordance with its regulations, used the import data from the immediately preceding year to determine worker eligibility for certification in 2004. In determining whether increased subject imports contributed importantly to the separation of the petitioning group, the regulations direct the Department to compare import data in what is referred to as the "representative base period." 29 C.F.R. § 90.2. "The representative base period shall be one year consisting of the four quarters immediately preceding the date which is twelve months prior to the date of the petition." *Id.*

*See* Request for Reconsideration of TA-W-54,455: Former Employees

of Weirton Steel Corporation (June 18, 2004), AR at 119

("Reconsideration Request"); 29 C.F.R. § 90.18(a).[7]  In its

request, ISU claimed that the Department unreasonably failed to

examine any evidence that related to events that occurred outside

of the one-year representative base period.  *See* Reconsideration

Request, AR at 122.  For ISU, had the Department considered this

evidence when reaching its final determination, it would have

been compelled to conclude that increased imports led to

Weirton's decline, eventual bankruptcy and worker separation.

*See id.*  Put another way, ISU argued that considering the

evidence outside of the representative period would result in an

affirmative determination and, thus, certification of the workers

as eligible to apply for TAA benefits.  ISU urged the Department,

as a matter of policy, to extend the period of investigation

because doing so would be "[i]n keeping with the remedial purpose

---

[7]    The regulation provides, in pertinent part:

> (a) *Determinations subject to
> reconsideration; time for filing.*  Any
> worker, group of workers, . . . or authorized
> representative of such worker or group,
> aggrieved by a determination issued pursuant
> to the Act . . . may file an application for
> reconsideration of the determination . . . .
> All applications must be in writing and must
> be filed no later than thirty (30) days after
> the notice of the determination has been
> published in the Federal Register.

29 C.F.R. § 90.18(a).

of the statute, and the ability of the Department to deviate from its regulations and prior practice where good cause exists . . . ."  Reconsideration Request, AR at 129.

On July 23, 2004, the Department published its determination denying plaintiff's Reconsideration Request, stating that it "must conform to the Trade Act and associated regulations," which limit its review to evidence from the "relevant period of the current investigation."  Reconsideration Denial, AR at 197. Based on the evidence from the representative base period, Labor found that: (1) sales at Weirton increased from 2002 to 2003; and (2) imports did not contribute importantly to the layoffs of Weirton's workers.  *See id.*, AR at 196.

On September 14, 2004, having failed in its attempt to persuade the Department to reconsider the denial of Weirton's 2004 Petition, ISU again asked Labor to amend the 2002 Certification to extend its coverage to May 18, 2004, three-and-a-half weeks beyond the established expiration date.  *See* Letter from Mr. Terence P. Stewart to Mr. Timothy F. Sullivan, Director, Division of Trade Adjustment Assistance (Sept. 14, 2004) ("Stewart Letter").  As of May 18, 2004, ISG was the new owner of the plant.  *See id.* at 2.  As a result, ISU argued that Weirton could no longer be considered a producer of steel and, thus, all of its production employees were permanently separated from that date forward.  *See id.*  In support of its position, ISU cited two

prior instances where Labor granted similar requests. *See id.* at

3. Nevertheless, on September 24, 2004, the Department denied

ISU's request to extend the duration of the 2002 Certification

because: (1) Weirton was a steel producer; (2) the scenario

presented was dissimilar to those in which amendments had

previously been granted because, in this case, production at the

plant continued whereas in the other instances, workers were

retained in decommissioning the plant; and (3) as Labor indicated

in its earlier determinations relating to Weirton's workers,

increased steel imports simply were not a cause of the workers'

separation from the company. *See* Labor Letter.

Plaintiff now challenges Labor's denial of its

reconsideration and amendment requests. Jurisdiction over both

the denied petition for TAA eligibility and the denied request

for an amendment lies with 28 U.S.C. § 1581(d)(1) (2000) and 19

U.S.C. § 2395(c) or in the alternative, with respect to the

denied request for an amendment, 28 U.S.C. § 1581(i)(4) provides

a separate basis for jurisdiction.[8]

---

[8] The court has exclusive jurisdiction over an action commenced to review "any final determination of the Secretary of Labor under [19 U.S.C. § 2273] with respect to the eligibility of workers for adjustment assistance . . . ." 28 U.S.C. § 1581(d)(1). A negative determination on reconsideration "shall constitute a final determination for purposes of judicial review pursuant to . . . 19 U.S.C. § 2395 . . . ." 29 C.F.R. 90.18(i). Specifically, the court "shall have jurisdiction to affirm the action of the Secretary of Labor . . . or to set such action aside, in whole or in part." 19 U.S.C. § 2395(c). In addition,
                                                          (continued...)

## STANDARD OF REVIEW

The court reviews the Department's determination not to reconsider its denial of plaintiff's 2004 Petition for substantial evidence.  Specifically, "[t]he findings of fact by the Secretary of Labor . . . if supported by substantial evidence, shall be conclusive; but the court, for good cause shown, may remand the case . . . to take further evidence, and [the] Secretary may thereupon make new or modified findings of fact and may modify his previous action . . . ."  19 U.S.C. § 2395(b).  "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion."  *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), *aff'd*, 810 F.2d 1137 (Fed. Cir. 1987) (citations omitted).  Good cause for remanding the Department's determination "exists if [its] chosen methodology is so marred that [its] finding is arbitrary or of such a nature that it could not be based on substantial evidence."  *Former Employees of Linden Apparel Corp. v. United States,* 13 CIT 467, 469, 715 F. Supp. 378, 381 (1989) (internal

---

[8](...continued)
the United States Court of Appeals for the Federal Circuit has held that the court may exercise jurisdiction pursuant to 28 U.S.C. § 1581(i)(4), but stated that the provision "limits the court's review to Labor's administration and enforcement of Trade Act determinations under § 1581(d)."  *Former Employees of Quality Fabricating, Inc. v. United States Sec'y of Labor*, 448 F.3d 1351, 1355 (Fed. Cir. 2006).

citations and quotation marks omitted).  Finally, the court's

review of the Department's findings is confined to the

administrative record.  *See* 28 U.S.C. § 2640(c) ("In any civil

action commenced in the Court of International Trade to review

any final determination of the Secretary of Labor under [19

U.S.C. § 2273] . . . the court shall review the matter as

specified in [19 U.S.C. § 2395].").

DISCUSSION

I.   Plaintiff's Motion

     A.   Relevant Law

Under the statutory scheme for determining group eligibility

to apply for TAA benefits, petitioning workers must demonstrate

to the Department that:

> (1) a significant number or proportion of the
> workers in such workers' firm, or an
> appropriate subdivision of the firm, have
> become totally or partially separated, or are
> threatened to become totally or partially
> separated; and
>
> (2)(A)(i) the sales or production, or both,
> of such firm or subdivision have decreased
> absolutely;
>
> (ii) imports of articles like or directly
> competitive with articles produced by such
> firm or subdivision have increased; and
>
> (iii) the increase in imports described in
> clause (ii) contributed importantly to such
> workers' separation or threat of separation
> and to the decline in the sales or production

of such firm or subdivision; or

(B)(i) there has been a shift in production
by such workers' firm or subdivision to a
foreign country of articles like or directly
competitive with articles which are produced
by such firm or subdivision; and

(ii)(I) the country to which the workers'
firm has shifted production of the articles
is a party to a free trade agreement with the
United States;

(II) the country to which the workers' firm
has shifted production of the articles is a
beneficiary country under the Andean Trade
Preference Act, African Growth and
Opportunity Act, or the Caribbean Basin
Economic Recovery Act; or

(III) there has been or is likely to be an
increase in imports of articles that are like
or directly competitive with articles which
are or were produced by such firm or
subdivision.

19 U.S.C. §§ 2272(a)(1),(2)(A) & (B); *see also* 19 U.S.C.

§ 2273(a) ("As soon as possible after the date on which a

petition is filed under section 2271 of this title, . . . the

Secretary shall determine whether the petitioning group meets the

requirements of section 2272 . . . ."). For purposes of 19

U.S.C. § 2272(a)(2)(A)(iii), the petitioning workers need only

demonstrate that the increase in imports is an important cause of

the separation, "but not necessarily more important than any

other cause." 19 U.S.C. § 2272(c)(1). Satisfaction of

§ 2272(a)(1) and (2)(A) or (2)(B) results in the issuance of a

certification of eligibility. The certification must specify the

date of worker separation.  *See* 19 U.S.C. § 2273(a).

Notably, Labor not only decides whether a group of workers is eligible for TAA benefits, but may also determine when the certification expires.  *See* 19 U.S.C. § 2273(d) (permitting Labor to terminate certification where "total or partial separations from [the] firm or subdivision are no longer attributable to the conditions specified in [19 U.S.C. § 2272] . . . ."); *see also* 29 C.F.R. § 90.16(d)(2) ("When applicable, the certification shall specify the date(s) after which the total or partial separations of the petitioning group of workers . . . specified in the certification are no longer attributable to the conditions set forth in paragraph (b) of this section."); 29 C.F.R. § 90.17(f) ("Upon reaching a determination that the certification of eligibility should be continued, the certifying officer shall promptly publish in the Federal Register a summary of the determination with the reasons therefor.").  That is, where the Department does not specify a termination date at the time of certification, the statute and regulations anticipate a further investigation by which the Department may decide to terminate or continue the certification based on the circumstances.  *See* 19 U.S.C. § 2273(d); 29 C.F.R. § 90.17(f).  Absent such circumstances, the period in which workers are certified to apply for TAA benefits is statutorily limited to two years.  *See* 19 U.S.C. § 2291(a)(1)(B); *see also Commc'ns Workers of Am., AFL-*

*CIO v. United States Sec'y of Labor*, 19 CIT 687, 690 (1995) (not published in the Federal Supplement).


    B.    Plaintiff's 2004 Petition for Certification

    Plaintiff first claims that the Department not only unreasonably denied Weirton's 2004 Petition for certification, but compounded that unreasonableness by issuing a negative determination on plaintiff's request for reconsideration of the initial denial.  Plaintiff raises two related arguments in support of its contention that the Department should be required to reconsider the negative determination and grant plaintiff's 2004 Petition.  First, it insists that the Department unreasonably declined to consider evidence of events that took place outside of the one-year representative base period.  *See* Pl.'s Mem. at 13.  Second, plaintiff asserts that the remedial purpose of the TAA statute required the Department to consider such factors as the "surges of imports from 1998–2002 [that] drove steel prices to unsustainable lows," causing prices to collapse, even though those events took place outside of the representative base period.[9]  *Id*. at 14.  Thus, ISU claims that the effects from the same increased steel imports that the

---

    [9]    According to ISU, the trade adjustment statutes are remedial in nature and should be administered with high regard to the interest of the workers.  *See* Pl.'s Mem. at 13 (citing *Former Employees of Elec. Data Sys. Corp. v. United States Sec'y of Labor*, 28 CIT __, 350 F. Supp. 2d 1282 (2004)).

Department found contributed importantly to the separation of Weirton's employees in 2002, continued to affect adversely workers beyond April 23, 2004.

In addition, plaintiff argues that while the number of units sold by Weirton may have increased for some of its products, the units actually produced by the company decreased for all but one item during the examined time period.[10]  *See* Pl.'s Mem. at 9; Reconsideration Request, AR at 128.  Plaintiff asserts that these factors coupled with previous determinations by Labor to extend the one-year representative base period, demonstrate that Labor's denial of plaintiff's 2004 Petition is unsupported by substantial evidence and not in accordance with law.

Labor supports its determination by emphasizing that its denial of Weirton's 2004 Petition was the result of its adherence to its regulations.  That is, Labor found that the evidence from the representative base period failed to demonstrate that increased imports contributed importantly to the workers' separation and, in turn, plaintiff failed to satisfy 19 U.S.C. § 2272(a)(2).  *See* 2004 Determination, AR at 100-03. Specifically, Labor maintains that during the one year prior to the filing of the petition on March 9, 2004, there were

---

[10]    For instance, the record indicates that production totals dropped from 15,521 to 14,902 (tons per year in thousands) from 2002 to 2003.  *See* Reconsideration Request, Table I, AR at 128.

decreasing imports of "hot rolled carbon sheet, cold rolled carbon sheet, hot dipped galvanized sheet and strip, galvanized electrolytic carbon sheet and strip, and tin mill products (black plate, tin plate, tin free) . . . ." 2004 Determination, AR at 102; *see also* AR at 71-75. Likewise, the Department concluded that Weirton's relevant sales increased over the same time frame.[11] *See* 2004 Determination, AR at 102.

In response to plaintiff's claim that the Department abused its discretion by not reviewing evidence outside of the representative base period, Labor contends that it acted reasonably by following the limitations imposed by the regulation. The regulation provides that "[t]he representative base period shall be one year consisting of the four quarters immediately preceding the date which is twelve months prior to the date of the petition." 29 C.F.R. § 90.2. In Labor's view, limiting its review to the time period prescribed by its regulations demonstrates that it acted in accordance with law. *See* Def.'s Resp. at 15; Reconsideration Denial, AR at 197.

The Department's adherence to the one-year representative period has previously been found to be reasonable. *See Former Employees of Homestake Mining Co. v. Brock*, 12 CIT 270, 272-73

---

[11]    Although not providing the primary basis for its determination, Labor observed that a survey of Weirton's major customers indicated that those customers decreased their reliance on imported steel during the examined time period. *See* Reconsideration Denial, AR at 196.

(1988) (not published in the Federal Supplement) ("[T]his Court finds that the Secretary is permitted to confine the investigation to the year of separation and the immediately preceding year in determining under [19 U.S.C. § 2272(a)(2)(iii)] . . . whether the imports found to be increasing 'contributed importantly' to the worker separations and to any decline in sales or production."); *see also Paden v. United States Dep't of Labor*, 562 F.2d 470, 473 (7th Cir. 1977) (holding that by "confining consideration to imports during the year of separation and the immediately preceding year, the Secretary can focus on those imports which are most likely to affect employment in the year of separation while diminishing consideration of those factors which, while affecting employment, are not within the coverage of the act.").

It is well settled that "[w]hen a court reviews an agency's construction of the statute which it administers, . . . if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). While possibly not permissible in all cases where workers have suffered injury from imports, in this case the regulation appears to be permissible. In the absence of specific statutory language, Labor determined that the one-year

representative base period would best promote accurate determinations as to the effects of increased imports on worker separation, and thereby advance the goal of ensuring that only those workers truly injured by competitive imports would be eligible to apply for TAA benefits. Under the facts of this case, plaintiff has not made a compelling argument that this interpretation of the TAA statute embodied in Labor's regulations is unreasonable. This is particularly the case where, as shall be seen *infra*, there is an alternative way to address plaintiff's complaints. Thus, the court finds that Labor's decision to base its denial of plaintiff's 2004 Petition and its denial of plaintiff's Reconsideration Request solely on evidence from the representative base period was reasonable and in accordance with law.

Having found reasonable Labor's decision to rely solely on evidence from the representative base period, the court now turns to the Department's substantive finding. Where petitioning workers assert in a new petition that their present separation is caused by the same factors that led to a prior certification, the Department cannot rely upon its prior findings, but rather must engage in an independent analysis before granting a new certification. *See Commc'ns Workers of America*, 19 CIT at 691.

Here, the Department found in its 2004 Determination that the requirements of § 2272(a)(2)(A) were not met. Labor

concluded that the record demonstrated that: (1) Weirton's sales increased absolutely; (2) imports of several articles directly competitive with those produced by Weirton did not increase; (3) increased imports did not contribute importantly to the separation of Weirton's workers; (4) Weirton had not shifted steel production to a foreign country; and (5) there would not likely be an increase in steel imports that would affect adversely Weirton's workers.  *See* 2004 Determination, AR at 102. While the court agrees with plaintiff that Labor is required to investigate whether "sales or production, or both" decreased and may not simply rely on an increase in sales in its analysis, the statute is clear in its mandate that petitioning workers must satisfy all of the requirements of either § 2272(a)(2)(A) or (B) to be certified as eligible to apply for TAA benefits.  Plaintiff does not argue that for the period reviewed, Labor unreasonably determined that its petition failed to demonstrate that subject imports contributed importantly to the workers' separation.  Thus, because the evidence supports Labor's conclusion that plaintiff did not satisfy the statutory requirements for certification, the court sustains Labor's Reconsideration Denial.

C.  Plaintiff's Request to Amend 2002 Certification

ISU next challenges Labor's denial of its September 14, 2004

request to amend[12] the 2002 Certification to extend the expiration date by three-and-a-half weeks to cover those 300 workers retained to transfer the plant to ISG.  Although Labor has extended the time period for a certification's coverage of workers in other instances, the Department denied plaintiff's request in part because "the situations addressed by the [prior] amendments . . . are not the same as the situation upon which plaintiff based its request . . . ."  Def.'s Mot. Leave Resp. Pl.'s Supplemental Citations and Def.'s Resp. Supplemental Citations ("Def.'s Resp. Supplemental Citations") at 2. Specifically, Labor stated that "the company was not closing, it was being sold to a new owner who continued to operate the business and there was undisputed evidence that the company's sales and production had increased since that last certification was issued."  *Id.*

     With respect to plaintiff's appeal to this court, however, Labor's principal argument is that the court lacks subject matter jurisdiction to hear plaintiff's challenge to its denial of the amendment request.  Plaintiff asserts that the court has

_____

     [12]    The court refers to ISU's request for an extension of time as an "amendment," although that term is not used in the relevant statutes or regulations.  Both Labor and this Court have used this term in describing previous requests to extend the time period for certification.  *See*, *e.g.*, *Former Employees of Motorola, Inc. v. United States Dep't of Labor*, 27 CIT __, __, Slip Op. 03-166 at 3 (Dec. 17, 2003) (not published in the Federal Supplement).

jurisdiction under 19 U.S.C. § 2395(c) and 28 U.S.C. § 1581(d), or in the alternative, under 28 U.S.C. § 1581(i)(4), the Court's residual jurisdiction provision.

In all cases, the court must, as a threshold matter, determine whether it has subject matter jurisdiction. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 593 (2004) ("[B]y whatever route a case arrives in federal court, it is the obligation of both . . . court and counsel to be alert to jurisdictional requirements."). The burden of establishing jurisdiction lies with the party seeking to invoke the court's jurisdiction. *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). Neither party disputes that the court may hear claims challenging a final determination of the Department that relates to the certification of a group of workers as eligible to apply for TAA benefits. *See* 28 U.S.C. § 1581(d)(1) ("The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review . . . any final determination of the Secretary . . . under [19 U.S.C. § 2273] with respect to the eligibility of workers for adjustment assistance . . . .").

For plaintiff, "[t]he Department's decision to deny [its] request for an amendment of the [2002 Certification] was a final determination of the Secretary of Labor under . . . 19 U.S.C. § 2273, with respect to the eligibility of workers for adjustment

assistance."  Pl.'s Mem. at 22.  As plaintiff observes,

> The letter from the Department to Terence P. Stewart, dated September 24, 2004, denying ISU's request for an extension of the 2002 [C]ertification's expiration date constitutes a final agency action and there is no other adequate remedy in a court.  In the letter, the Department provided two reasons for denying the ISU's request.  First, the Department noted that the two trade petition certifications referenced by the ISU in its request were distinguishable from Weirton's situation because in those cases, workers were retained to assist with the plant closure after production had ceased.  That is not the case for workers at Weirton Steel.  Second, the Department noted that it conducted a full and careful investigation in [the 2004 Determination] and issued negative determinations for the initial petition . . . and the subsequent application for reconsideration.  Labor concluded that since the Department determined that workers of the firm were not adversely affected by increases in imports we are unable to comply with your request.

*Id.* at 23 (internal alterations, citations and quotation marks omitted).  In other words, plaintiff contends that for Labor to have concluded that an amendment to the 2002 Certification was not warranted, it (1) must have examined the evidence and concluded that the retention of workers for the purpose of shutting down a plant was somehow different from being retained until the plant is turned over to a new company; or (2) must necessarily have analyzed plaintiff's request under the criteria set forth in 19 U.S.C. § 2272.

For its part, Labor first claims that jurisdiction is lacking because on its face "[a] decision denying an extension of time for the period covering a certification . . . is not a determination that a petitioning group meets the requirements of 19 U.S.C. § 2272 and, therefore is not an appealable decision within the jurisdiction of this Court . . . ." Def.'s Resp. at 17 (internal quotation marks omitted).[13]  In other words, the Department understands the analysis involved in determining whether to grant or deny a request for an extension of a certification's duration to be independent from that concerning a petition for certification and hence not reviewable by the court.

Read together, 19 U.S.C. § 2395(c) and 28 U.S.C. § 1581(d) grant the court jurisdiction over final determinations by the Department concerning the petition of a group of workers for certification as eligible to apply for TAA benefits.  Thus, jurisdiction over plaintiff's claim challenging Labor's denial of its request to amend the 2002 Certification may be exercised if

---

[13]    The Department asserts that the instant dispute is analogous to that presented to the United States Court of Appeals for the Federal Circuit in *Mitsubishi Elec. of Am., Inc. v. United States*, 44 F.3d 973, 976 (Fed. Cir. 1994). *See* Def.'s Resp. at 16-17.  There, the Federal Circuit held that this Court lacked subject matter jurisdiction over any contest of a Customs decision not relating to one of the specifically delineated matters in 19 U.S.C. § 1514(a).  The Department, therefore, argues that because review of a Labor determination denying a plaintiff's request to amend an existing TAA certification is not specifically listed in the statute as an action over which the court has jurisdiction, ISU's cause of action should be dismissed.

the denial is (1) a final determination; and (2) regards the requirements for certification set forth in 19 U.S.C. § 2272.

The court finds that plaintiff established jurisdiction under 19 U.S.C. § 2395(c) and 28 U.S.C. § 1581(d). First, the court recognizes that "final determination" is not defined by statute or regulation. However, the concept of finality as applied to agency determinations is readily understood as referring to an action where the "decision-making process has reached a stage where judicial review will not disrupt the orderly process of adjudication." 5 Jacob A. Stein, Glenn A. Mitchell & Basil J. Mezines, *Administrative Law* § 48.03[1] at 41 (2006); *see also Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) ("As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process, . . . [a]nd second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.") (internal citations and quotation marks omitted). Here, Labor issued its denial on September 24, 2004 in the form of a letter addressed to plaintiff's counsel. *See* Labor Letter. In the letter, the Department stated that the basis for its denial was its determination that "workers of the firm were not adversely affected by increases in imports" and suggested that "former workers of the firm . . . seek information on other

programs administered by the Department . . . ." *Id*. Despite the seeming informality of the Department's determination, the denial was indeed final. *See Natural Res. Def. Council, Inc. v. E.P.A.*, 22 F.3d 1125, 1132–33 (D.C. Cir. 1994) ("[T]he absence of a formal statement of the agency's position . . . is not dispositive: An agency may not, for example, avoid judicial review merely by choosing the form of a letter to express a definitive position on a general question of statutory interpretation.") (internal citations and quotation marks omitted). It is apparent that the Department engaged in a review of plaintiff's request and denied the same with every intention of binding plaintiff and with no intention of revisiting the issue. Thus, the decision to deny plaintiff's request constituted a final determination.

Second, the court finds that Labor's determination was at least in part based upon an analysis of the § 2272 criteria. Indeed, it is unlikely that a decision not to extend the duration of an existing TAA eligibility certification could be based on substantial evidence without evaluating whether the factors found in § 2272 are satisfied. This evaluation appears to have been one of the reasons Labor gave for its decision in its September 24, 2004 letter. Therefore, because the Department's denial of ISU's request to amend the 2002 Certification was a final determination relating to the § 2272 criteria, jurisdiction is

had pursuant to 19 U.S.C. § 2395(c) and 28 U.S.C. § 1581(d)(1).

Should it be that the foregoing analysis does not provide a basis for jurisdiction, however, 28 U.S.C. § 1581(i)(4) provides an independent basis for hearing plaintiff's case. Subsection 1581(i)(4) empowers the Court to hear complaints regarding an agency's administration and enforcement of the trade laws. *See* 28 U.S.C. § 1581(i)(4) ("[T]he [Court] shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in . . . subsections (a)-(h) of this section."). As has been previously seen, 28 U.S.C. § 1581(d)(1) and 19 U.S.C. § 2395(c) give the Court authority to review any final determination of the Department regarding the eligibility of workers to apply for TAA benefits.

It is clear that plaintiff's action seeking review of the Department's denial of its amendment request is a challenge to the Department's administration and enforcement of 19 U.S.C. §§ 2272 and 2273. In denying plaintiff's application to extend the 2002 Certification, the Department was clearly engaging in the administration and enforcement of that certification. Therefore, an independent basis for jurisdiction over the instant matter is found under 28 U.S.C. § 1581(i)(4).

Labor next advances the argument that, should the court find it has jurisdiction over this matter, plaintiff's action should nevertheless be dismissed as having been untimely commenced. *See* Def.'s Resp. at 16. This position rests on Labor's framing of plaintiff's request as one seeking reconsideration of the 2002 Certification determination. According to 29 C.F.R. § 90.18(a) "[a]ll applications [for reconsideration] must be in writing and must be filed no later than thirty (30) days after the notice of the determination has been published in the Federal Register." According to the Department:

> If ISU wanted to appeal Labor's determination regarding the date the [2002] [C]ertification expired, it should have done so within the time limit to appeal that decision. It did not do so. Therefore, ISU cannot now avoid the time limit for appealing that decision by submitting a request to amend the earlier decision and then appealing the denial of the request to amend.

Def.'s Resp. at 16. Thus, because plaintiff did not seek reconsideration of the Department's 2002 determination within thirty days of its issuance, Labor maintains that the court cannot hear plaintiff's claim.[14]

---

[14] It is worth noting that although not cited as a basis for its denial of plaintiff's request, the Department now contends that it has an established policy of dismissing these requests out-of-hand. *See* Def.'s Resp. Supplemental Citations at 2 ("It is these type[s] of amendments that Labor later determined were not within its authority to issue and Labor has advised defendant's counsel that it has ceased issuing them.").

The Department's position is untenable. A request to amend an existing certification based on changed circumstances is not the same as an application for reconsideration of an initial determination. An application for reconsideration seeks the correction of an error discoverable at the time the final determination is issued. The thirty-day period provided by 29 C.F.R. § 90.18(a) confirms that such error must be apparent or capable of being discovered at that time. The making of the application for reconsideration, therefore, is unlike a request for an amendment to an existing certification in that it is not contingent on a change of circumstances. The adoption of Labor's position would require a petitioning group of workers to predict within thirty days of publication of the determination what circumstances might exist as much as two years later. In the present case, the Department would have Weirton look ahead twenty-two months and determine whether certification should extend beyond the two-year statutory period. Thus, the court finds that a petitioning group's request to amend an existing certification as the result of a change in circumstances does not constitute an application for reconsideration as contemplated by 29 C.F.R. § 90.18(a).

As a result of the foregoing, the court finds that it may properly exercise jurisdiction over plaintiff's challenge to Labor's determination not to extend the 2002 Certification and

that defendant's other arguments are without merit.  The court refrains from reaching the merits of this matter, however, until Labor has submitted the complete administrative record with respect to plaintiff's amendment request.


CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Labor's determination denying plaintiff's request for reconsideration of Labor's denial of plaintiff's 2004 Petition is sustained;

ORDERED that defendant's motion to dismiss Count IV of plaintiff's complaint is denied; and it is further

ORDERED that this matter is remanded to Labor with instructions to assemble and submit to the court the administrative record regarding plaintiff's amendment claim by December 18, 2006.


                                    /s/Richard K. Eaton
                                      Richard K. Eaton

Dated:    November 17, 2006
          New York, New York